Alice Chen Smith, SBN 251654
asmith@yokasmith.com
Christine C. De Metruis, SBN 203610
cdemetruis@yokasmith.com
**YOKA | SMITH, LLP**
**445 South Figueroa St., 38th Floor**
**Los Angeles, California 90071**
**Phone: (213) 427-2300**
**Fax: (213) 427-2330**

Attorneys for Plaintiff, FITNESS INTERNATIONAL, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FITNESS INTERNATIONAL, LLC<br><br>Plaintiff,<br><br>-vs-<br><br>LEAH ALSPAUGH and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 8:22-CV-01800-DOC-DFM<br>Hon. David O. Carter<br><br>**FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT AND FOR MONETARY SANCTIONS AND/OR IMPRISONMENT OF DEFENDANT**<br><br><u>Hearing</u><br>Date:<br>Time:<br>Courtroom: 10A |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Good cause exists to grant plaintiff FITNESS INTERNATIONAL, LLC's ("Fitness") *Ex Parte* application for an Order to Show Cause Re Contempt and for Monetary Sanctions or Imprisonment of defendant LEAH ALSPAUGH ("Defendant"). Defendant's willful defiance of the Court's Preliminary Injunction began almost immediately after its issuance, and her infringing and harassing conduct continues to this day. However, as discussed in detail below, Defendant's conduct has become increasingly severe warranting intervention by this Court. Specifically, on January 11, 2023, Fitness learned that Defendant retained an outside vendor to inspect and/or modify the computers at one of Fitness' gyms in Memphis, Tennessee. On January 17, 2023, Fitness learned Defendant filed a frivolous Petition for a Temporary Restraining Order *on behalf of, and as the owner of, LA Fitness*, against one of Fitness' current employees, falsely claiming the employee had been terminated and was trespassing on Fitness' property, thereby requiring the employee, her district manager, and Fitness' counsel, Alice Chen Smith, Esq., to appear at the January 24, 2023 hearing, at which the Petition was summarily dismissed for lacking any merit. On January 22, 2023, Defendant showed up at Fitness' downtown Los Angeles gym, walked into the sales area, rifled through a sales desk, and then went underneath another desk in an apparent attempt to unplug the computer before being escorted out. On January 26, 2023, Defendant called Fitness' membership line, identified herself as the "employer," and requested Fitness' "tax information" which she claimed she needed in order to renew club leases. On January 31, 2023, Defendant showed up at Fitness' Irvine-Crossroads gym, and informed the gym's operating manager that she was the owner and was there to work on the computers. Defendant refused to leave, and the police were called. Finally, on February 1, 2023, Defendant showed up at Fitness' corporate offices *with movers* to remove furniture from Fitness' offices.

There also is no doubt that Defendant's continuous violations are willful acts with the sole purpose of disrupting Fitness business operations and causing harm to Fitness. On December 5, 2022, this Court specifically warned Defendant that there would be strict consequences should she fail to comply with the Preliminary Injunction. Further, on January 17, 2023, Fitness' counsel, Alice Chen Smith, Esq., sent an email to Defendant regarding her numerous violations, and putting her on notice that Fitness would bring the violations to the Court's attention if they continued. Yet neither the entry of the Preliminary Injunction, this Court's warning, nor Ms. Smith's email has had any effect on her conduct. Given Defendant's blatant disregard for this Court's Order, Fitness respectfully requests that the Court grant the instant Application, and set an Order to Show Cause why Defendant should not be held in contempt and why sanctions in the amount of $500 and/or imprisonment for each future violation of the Court's Preliminary Injunction should not issue. Further, Fitness will suffer irreparable harm to its business operations, employee relations, and reputation, if Defendant's conduct continues. As such, Fitness requests that this Court schedule the hearing on the Order to Show Cause at the earliest possible date.

## II. RELEVANT FACTS

Fitness filed its Complaint in the present action on October 3, 2022. [Dkt. 1] By way of its Complaint, Fitness alleges in pertinent part that Defendant, a former Fitness employee who has not worked at Fitness since 2013, is infringing on Fitness' federally-registered trademarks, "LA Fitness," "L.A. Fitness" and "Pro Results", by using confusingly similar names as both business names and as email addresses; that Defendant is holding herself out to third parties as well as Fitness employees as the owner or representative of Fitness and its brands; that Defendant has trespassed on Fitness' property; and that Defendant has sent harassing and misleading emails to Fitness employees, amongst other things. [*Id.*]

On November 1, 2022, this Court issued a Preliminary Injunction that enjoined Defendant from the following conduct until a final determination on the merits of this case by the trier of fact:

1. Infringing on Fitness' federally registered trademarks;

2. Making representations to any person or entity that she is the owner, agent, representative or affiliated with Fitness or any of its brands, including LA Fitness and Pro Results;

3. Taking any action, including filing any document with any federal or state agency under the name LA Fitness, Fitness International, LLC, Pro Results, or similar names;

4. Communicating with any of Fitness' employees, either by email, phone or in person; and

5. Entering, or coming within 50 feet of, any Fitness facility nationwide, including Fitness' gyms and corporate headquarters. [Dkt. 26.]

On November 30, 2022, Defendant filed a Motion for Reconsideration, which was set for hearing on January 2, 2023. [Dkt. 29.] However, at the December 5, 2022 scheduling conference (at which Defendant appeared in person), the Court denied the reconsideration motion, stating in part: "That preliminary injunction remains in place, Ms. Alspaugh, and please don't violate it." [**Ex. 1** to the Smith Decl., at 6:18-25.] When informed that Defendant had already violated the Preliminary Injunction, the Court stated: "I'm going to be lenient in that regard, Ms. Alspaugh. I'm just admonishing you. I'm not seeking any intervention by the Court at this time, *but you are on fair notice concerning the injunctive relief that I've granted. Please obey the Court's order, because the repercussions of not doing so can be very strict, okay?*" [*Id.* at 7:3-9,

emphasis added.][1] Despite this warning, Defendant continues to ignore the Court's Order and refuses to comply with the obligations under the Preliminary Injunction as discussed below.

### A. Defendant's State Court Filings As The "Owner" Of LA Fitness

On November 15, 2022, Defendant filed an action in the Los Angeles Superior Court entitled *LA Fitness and Leah Alspaugh v. Fitness International, LLC*, case number 22STCV36005, asserting claims for quiet title for unidentified "LA Fitness properties," fraudulent registration of federal trademark for LA Fitness, breach of contract with LA Fitness' trade secrets and tortious interference with LA Fitness' business operations. [**Ex. 2** to the Smith Decl.] On January 11, 2023, Defendant filed a First Amended Complaint, again on behalf of "LA Fitness, LLC." [**Ex. 3** to the Smith Decl.] As a result of Defendant's action, Fitness (through its brand, LA Fitness) is now suing Fitness in state court.

Moreover, on January 5, 2023, Defendant, again on behalf of "LA Fitness," filed a Petition for Workplace Violence Restraining Order against the Operations Manager of one of Fitness' downtown Los Angeles gyms, Alexandra Garcia, with the Los Angeles Superior Court, case number 23STRO000058. [Garcia Decl., at ¶2, and **Ex. 1** thereto.] Defendant identified herself as both the "employee in need of protection," and the "owner" of LA Fitness, and alleged that Ms. Garcia had been terminated from her employment however refuses to leave and has made threats against fellow employees, amongst other things. [**Ex. 1** to the Garcia Decl.] The Petition was denied, and a hearing was scheduled for January 24, 2023. Ms. Garcia was served with the Notice of Court Hearing and the Petition papers on January 17, 2023, and had no prior knowledge of the Petition prior to being served. [Garcia Decl., at ¶2, and **Ex. 1** thereto.]

---

[1] Defendant has also ignored the Court's direction to file her answer to Fitness' Complaint within seven (7) days of the December 5, 2022 hearing [**Ex. 1** to the Smith Decl., at 12:3-8], and as such, the case is still not at issue.

Ms. Garcia appeared at the hearing along with her district manager, Jean Sanz, and was represented by Fitness' counsel, Alice Chen Smith, Esq. [Garcia Decl., at ¶3; Smith Decl. at ¶4, and **Ex. 4** thereto.] At the hearing, Defendant represented that she was the owner of LA Fitness, admitted to calling and visiting Fitness' clubs, and claimed that Ms. Garcia had hired people as employees to use "our" computers and tap into "our" financials. [**Ex. 4** to the Smith Decl., at 2:20-23, 3:17-20, 4:8-12, 4:21-24, 7:1-5, 8:24-9:12.] The Court denied the Petition based solely on Defendant's statements at the hearing. [*Id.*at 11:12-16.]

Defendant's representations in her Petition and at the hearing are patently false. Again, Defendant is not the owner or employee of Fitness or any of its brands, including LA Fitness. Moreover, Ms. Garcia was and continues to be the Operations Manager of Fitness' downtown Los Angeles club, and has not been terminated, is not trespassing on Fitness' property, and there are no complaints by any Fitness employee against Ms. Garcia. [Garcia Decl., at ¶1; Stokesberry Decl., at ¶2.]

While Defendant is free to take action in her own name, the filing of a civil action and a Petition for a TRO on behalf of "LA Fitness" is a direct violation of the first three prohibitions in the Preliminary Injunction. Specifically, (1) the use of the name "LA Fitness" infringes on Fitness' federally registered trademark; (2) she is falsely representing herself to be the owner and employee of Fitness; and (3) by filing the litigation, as well as the Petition for a TRO, Defendant is taking action on behalf of LA Fitness that directly impacts both Fitness' business, but also its employees.

**B. Defendant Continues To Trespass Onto Fitness Properties**

On November 10, 2022, Defendant went to Fitness' Hollywood Boulevard gym, and informed the gym's general manager, Caroline Kim, that she worked for the company and was there to install software and upgrade the systems. Defendant provided Ms. Kim, with the email address Proresults411@yahoo.com. Defendant was

handed a copy of the preliminary injunction and told she had to leave. [Kim Decl., at ¶2.]

On Friday, November 25, 2022, Defendant *again* showed up at Fitness' Hollywood Boulevard gym, and told Ms. Kim that her task is now to open accounts at different banks for LA Fitness. The police were called and Defendant was arrested. [Kim Decl., at ¶3.]

On January 9, 2023, Defendant went to Fitness' corporate office, and informed the security guard in the lobby that she was there to see Fitness' Vice President of Human Resources, Mindy Stokesberry. Ms. Stokesberry reminded the security guard that Defendant was not permitted to enter Fitness' office. Ms. Stokesberry was later informed by building security that Defendant initially refused to leave, and only did so after the security guard threatened to call the police. [Stokesberry Decl. at ¶3.]

On January 16, 2023, Ms. Stokesberry was informed by the Operations Manager of Fitness' Long Beach-Cherry location, Daisy Alfaro, that Defendant entered that club many times, most recently on January 16, 2023, when Ms. Alspaugh informed Ms. Alfaro that an "Asian man" was pretending to be the owner of LA Fitness, and he is stealing money from the company. [Stokesberry Decl. at ¶4, and **Ex. 1** attached thereto.][1]

Defendant has further entered Fitness' downtown Los Angeles gym on numerous occasions. Notably, as discussed in Fitness' Additional Brief in Support of Its Response to Court's Order to Show Cause Why a Preliminary Injunction Should Not Issue, the Los Angeles Police Department had already issued a No Trespass warning to Defendant on October 17, 2022, after she entered that gym facility. [Dkt. 20, at 7:8-11; Garcia Decl., at ¶4, and **Ex. 2** attached thereto.] Since that time, Defendant has entered the

[1] As discussed below, Defendant confirms she has been to the Long Beach-Cherry club, as well as other Fitness clubs, in her email communications with Ms. Stokesberry. [*See* Section II.D, below, and **Ex. 3** to the Stokesberry Decl.]

downtown Los Angeles club on numerous occasions. Most recently, on January 20, 2023, Defendant entered the downtown Los Angeles at approximately 9:20 a.m., gym, went downstairs, and was escorted out by Fitness personnel at approximately 9:24 a.m. [Garcia Decl., at ¶¶5 and 6, and **Ex. 3** attached thereto.]

Two days later, on January 22, 2023, Defendant showed up again at Fitness' downtown Los Angeles gym, walked back to the sales area, rifled through a desk, went underneath another desk, and then attempted to unplug a computer before being escorted out. Below is a link to the surveillance video from the downtown Los Angeles club with the date and time stamp, showing Defendant's activities at the club on January 22, 2023. [Garcia Decl., at ¶¶5 and 6.]

**[ https://yokasmith.sharefile.com/d-sec68c6dcda474e24bd473a4d911ad385 ]**

On January 31, 2023, Defendant showed up at Fitness' Irvine-Crossroads gym, represented herself as the "owner", and said she was there to work on computers. Defendant was told to leave and when she refused, the police were called. Although the police were informed of this Court's Preliminary Injunction, they were told they did not have sufficient grounds to detain her. [Shuber Decl., at ¶5.]

The following day, February 1, 2023, Defendant appeared outside of Fitness' corporate offices in Irvine at approximately 8:30 a.m. with representatives from Penn Corporate Relocation Services ("Penn"). Defendant was told by building security to leave, which she did. Afterwards, Ms. Stokesberry spoke with one of the Penn representatives, Ron Larrieu, who informed Ms. Stokesberry that he had several conversations with Defendant, and had a meeting with her that morning (February 1st) to move several items of furniture from Fitness' offices to another location. [Stokesberry decl., at ¶7.]

In addition to trespassing, the above actions violate the Preliminary Injunction's prohibitions against infringing on Fitness' trademarks (use of "Pro Results" in Defendant's email address), falsely representing to Fitness employees and third parties that she is the owner or representative of Fitness and its brands, taking action on behalf of Fitness (including attempting to work on Fitness computers, and move furniture from Fitness' corporate office), and contacting Fitness employees in person to discuss IT, personnel and company money issues.

**C. Defendant Retained An Outside Vendor To Inspect And/Or Modify Fitness' Computer Equipment In Tennessee**

On January 11, 2023, Fitness learned that Defendant had been in contact with a Christopher Orick, a representative of an IT company, Enhanced Telecomm Services, and arranged for Mr. Orick to inspect and potentially modify computer/ telecommunications equipment at a Fitness club in Memphis, Tennessee. Mr. Orick actually showed up at the club; however, he was not permitted to touch any equipment. Mr. Orick later forwarded the email and text communications he had with Defendant, including photographs of Fitness' equipment. Defendant again used the email address of proresults411@gmail.com in her communications with Mr. Orick. [Stokesberry Decl. at ¶5, and **Ex. 2** thereto; Shuber Decl., at ¶2, and **Ex. 1** thereto.]

Defendant's contact with Mr. Orick violate numerous provisions of the Preliminary Injunction. Specifically, her use of "Pro Results" as part of her email address infringes on Fitness' trademark, she is falsely representing to a third party that she is the owner and/or representative of Fitness and its brands, and she is attempting to have a third party (Mr. Orick) take action on behalf of Fitness and its brands – namely, unwittingly breach Fitness' computer system in Tennessee.

**D. Defendant's Other Communications With Fitness Personnel**

In addition to her continued in-person contacts with Fitness personnel, Defendant continues to contact Fitness personnel by email using the email address proresults411@gmail.com:

- December 22, 2022 at 5:22 p.m., Defendant sent an email to Fitness' Vice President of Human Resources, Mindy Stokesberry, stating that she "caught three males" at Fitness' Long Beach-Cherry gym who told her they were being paid $7,000 per month, stating that "we" own the club and she does not want Esporta people at the clubs, and stating there are NBA trainers nearby who may be a better fit.
- January 5, 2023 at 6:38 p.m., Defendant sent another email to Ms. Stokesberry regarding "member codes and regulations," and stating that "*we* cannot have a contract for a year term exceeding 3883.00." Defendant further admits not only to going to Fitness' Santa Fe Springs Club, but also to removing some equipment, stating "I just want to bring it to your attention today I made it [to] santa fe springs and I am finding 7200 contracted. And other weird devices *that we are removing from the* property."
- January 5, 2023 at 7:00 p.m., Defendant sent another email to Ms. Stokesberry stating "I meant slam dunk in a way that is obvious that Esporta has no affiliation to la fitness. We do not operate that way."
- January 5, 2023 at 7:01 p.m., Defendant sent Fitness Human Resources Manager Mervet Shuber an email stating "Happy new year Mervet."
- January 5, 2023 at 7:23 p.m., Defendant sent another email to Ms. Stokesberry regarding Fitness' Esporta Club in Santa Fe Springs, asking Ms. Stokesberry to verify if a "Peter woo" works there, and claiming there was a "4.1 billion transfer to this club."
- January 10, 2023 at 8:13 a.m., Defendant sent an email to Ms. Stokesberry regarding personnel a Fitness club in Long Beach on Bellflower Boulevard.

- January 14, 2023 at 6:25 p.m., Defendant sent an email to Ms. Stokesberry regarding a Brinks truck that Defendant contends is following her.
- January 15, 2023 at 2:13 p.m., Defendant sent an email to Ms. Stokesberry regarding giving away Monte Blanc pens as gifts, and the lack of membership sales at the Long Beach-Cherry gym, and that she spoke with someone named "Lee" at Long Beach-Cherry, who is "very aggressive" when she goes there.
- January 21, 2023 at 4:49 p.m., Defendant sent an email to Ms. Stokesberry, regarding employees listed under the employer ID number with the EDD, and changing vendors for pool maintenance.
- January 21, 2023 at 4:59 p.m., Defendant sent an email to Ms. Stokesberry regarding a training app, an investment in France, and Cisco products.

[Stokesberry Decl., at ¶6, and **Ex. 3** thereto; Shuber Decl., at ¶3, and **Ex. 2** thereto.]

Most recently, on January 26, 2023, Defendant called Fitness' Membership line, and informed Fitness' representative that she was the "employer," that LA Fitness uses her employer ID, and that she needed to obtain Fitness' tax documents to renew leases at Fitness' clubs. Below is a link to the telephone call (the call is 17 minutes long, however Defendant is on hold from 3:03 to 13:40, so there is no dialogue during that time). [Shuber Decl., at ¶4.]

**[ https://yokasmith.sharefile.com/d-sdff5383f72ee4e588fbc13aafb38bff3 ]**

Defendant's emails and telephone call to Fitness personnel breach the Preliminary Injunction's prohibition against contracting Fitness personnel, making false representations that she is the owner of or affiliated with Fitness and its brands, attempting to take action on behalf of Fitness and its brands, including actions related to vendors, memberships, employees, and leases, and infringing on Fitness' trademarks by using "Pro Results" as part of her email address.

In an effort to stop the ongoing violations and harassment, on January 17, 2023, Fitness' counsel, Alice Chen Smith, sent Defendant an email, informing her of her multiple violations of the Preliminary Injunction, demanding that she cease and desist from all such activity, and advising Defendant that Fitness would bring an *ex parte* application to notify the Court of her ongoing violations. [Smith Decl., at ¶5, and **Ex. 5** thereto.]

## III. <u>LEGAL AUTHORITY</u>

This Court has the inherent authority to enforce compliance with its orders through civil contempt. *Shillitani v. U.S.,* 384 U.S. 364, 370, 86 S. Ct. 1531, 1535. (1966). *See also* 18 U.S.C. 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … (3) Disobedience or resistance to its lawful … order….") To establish civil contempt, the moving party has the burden of establishing "(1) that [the opposing party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Labor/Community Strategy Center v. Los Angeles County Metropolitan Trans. Authority*, 564 F.3d 1115, 1123 (9th Cir. 2009) (citation omitted). The violator's intent is irrelevant, nor does the violation need to be willful. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d. 1361, 1365 (9th Cir. 1987) (citations omitted); *see also Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) ("Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.") Rather, an order of civil contempt is appropriate where a person fails to take all reasonable steps within his/her power to comply. *Crystal Palace, supra,* 817 F.2d. at 1365 (citations omitted).

Once the movant meets its initial burden, the burden shifts to the non-moving party to demonstrate either an inability to comply despite a good faith effort to do so, or that he/she has substantially complied with the order, and that any violations were merely technical or inadvertent. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation,* 10 F.3d 693, 695 (9th Cir. 1993); *Federal Trade Commission v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999); *Federal Trade Commission v. Lane Labs-USA, Inc.*, 624 F.3d 575, 591 (3d Cir. 2010).

## IV. <u>FITNESS HAS MET ITS BURDEN BY CLEAR AND CONVINCING EVIDENCE</u>

The November 1, 2022 Preliminary Injunction is clear and unambiguous: Defendant is enjoined from the following conduct until there is a trial on the merits: (1) infringing on Fitness' federally registered trademarks; (2) representing herself to anyone that she is the owner, representative or otherwise affiliated with Fitness or any of its brands, including LA Fitness and Pro Results; (3) taking any action or filing any document under the name LA Fitness, Fitness International, LLC, or Pro Results; (4) contacting Fitness' employees regarding employees or members; and (5) entering or coming within 50 feet of any Fitness facility, including its gyms and its corporate offices. [Dkt 26.] As the above facts demonstrate, Defendant has violated every facet of the Preliminary Injunction.

### A. Infringement Of Fitness' Trademarks

Defendant continues to infringe on Fitness' federally registered trademarks "LA Fitness", "L.A. Fitness", and "Pro Results". As discussed above, Defendant has filed a state court action entitled *LA Fitness, LLC v. Fitness International, LLC* Court, as well as a Petition for a Temporary Restraining Order as "LA Fitness" against one of Fitness' employees. Moreover, Defendant continues to use email addresses that include

"proresults" when contacting Fitness employees and third parties while discussing Fitness' business operations in a clear attempt to create confusion as to her affiliation with Fitness and its brands.

**B. Representations That She Is The Owner, Representative Or Affiliate Of Fitness Or Its Brands**

Defendant continues to misrepresent herself as the owner, representative or affiliate of LA Fitness and Pro Results to both third parties and to Fitness employees. In addition to filing the Complaint and a Petition for a TRO in the Los Angeles Superior Court in which she identifies herself as the "owner" of LA Fitness, Defendant continues to hold herself out as either the owner or representative of LA Fitness during her improper in-person and email communications with Fitness personnel. Moreover, Defendant has contacted at least one outside vendor, Christopher Orick of Enhanced Telecomm Services, under the guise that she is a Fitness representative in order to have Mr. Orick inspect and/or modify the computers at one of Fitness' gyms in Tennessee. Defendant further hired a moving company to remove furniture from Fitness' corporate offices. Finally, Defendant uses the email address proresults411@gmail.com in her communications with Fitness personnel and third parties regarding Fitness business operations, thereby also holding herself out to be affiliated with Fitness' brand, Pro Results.

**C. Taking Action Or Filing Documents Under The Name LA Fitness, Fitness International, Or Pro Results**

Again, Defendant's filing of the state court action "LA Fitness, LLC v. Fitness International, LLC", as well as a Petition for a TRO on behalf of LA Fitness against one of Fitness' employees, are a clear violation of the Preliminary Injunction's prohibition against taking any action or filing any documents under Fitness' brand names. Likewise, as discussed in subsection B, above, Defendant continues to falsely represent herself as the owner or representative of Fitness and it brands in her communications

with both Fitness personnel and outside venders in order to have such persons take actions which interfere with Fitness' business operations, business personal property. computers and software, employees, membership agreements, vendors, investments, and other matters.

**D. Contacting Fitness Personnel Regarding Fitness Members And Employees**

As discussed above, Defendant continues to contact Fitness personnel by emails to Fitness employees, Mindy Stokesberry and Mervet Shuber, and in person when she trespasses on Fitness' gyms, including its Hollywood Boulevard, Long Beach-Cherry, and downtown Los Angeles gyms.

**E. Entering Or Coming Withing 50 Feet Of Fitness' Facilities**

Defendant continues to enter Fitness facilities, including repeated entries in Fitness' Hollywood Boulevard, downtown Los Angeles, and Long Beach-Cherry gyms, and has attempted to enter Fitness' corporate offices on two occasions.

Fitness has met its initial burden showing by clear and convincing evidence that Defendant has blatantly and repeatedly violated the November 1, 2022 Preliminary Injunction. Defendant's actions were wholly voluntary, deliberate, and demonstrate a willful disregard of her duty to comply with this Court's Order. There is absolutely no excuse for Defendant's refusal to comply with the Preliminary Injunction. As such, Fitness requests that the Court grant the present motion, and require Defendant to show cause why she should not be held in civil contempt.

## V. THE COURT SHOULD IMPOSE SANCTIONS AGAINST DEFENDANT IN THE FORM MONETARY SANCTIONS AND/OR IMPRISONMENT

To the extent the Court find Defendant in contempt of the Court's Preliminary Injunction, Fitness respectfully requests that the Court use all of its available power to stop the continued willful disobedience of its authority in the form of sanctions and imprisonment.

District courts have discretion in determining the appropriate sanctions for civil contempt. *John T. ex rel. Paul T. v. Delaware County Intermediate Unit* , 318 F.3d 545, 544 (3rd Cir. 2003) Civil sanctions are permitted for two purposes: "(1) to coerce defendant into compliance with the court's order; and (2) to compensation the complainant for losses sustained as a result of the contumacious behavior." *Federal Trade Commission v. Productive Marketing, Inc.,* 136 F.Supp.2d 1096, 1112 (C.D. Cal. 2001) (citation and internal quotation omitted). "Where a fine is imposed as a contempt sanction, it is considered remedial, and therefore civil, when the defendant can avoid paying the fine simply by performing the … act required by the court's order." *Aradia Women's Health Center v. Operation Rescue*, 929 F.2d 530, 532 (9th Cir. 1999) (citation and internal quotation omitted); *see also Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 877 F.2d 787, 790 (9th Cir. 1989) ("If the sanction is a fine payable to the court, it is remedial if the defendant can avoid paying the fine by performing the act required by the court's order.") Moreover, where, as here, the failure to perform an act is wholly within the Defendant's power perform, the Court may also imprison the Defendant until he or she agrees to comply with the Court's Order. *American Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 584 (5th Cir. 2000). In such cases, the term of imprisonment is considered civil, nor criminal, as it is designed to compel future compliance with the court's orders, rather than punish the contemnor for past violations. *U.S. v. Powers,* 629 F.2d 619, 626-627 (9th Cir. 1980). Here, Defendant's continuing violations of the Preliminary Injunction warrant the imposition of such remedial sanctions to coerce compliance with the Court's Order.

As discussed above, there can be no dispute that Defendant has engaged, and continues to engage, in willful violations of the Preliminary Injunction. Moreover, on December 5, 2022, this Court admonished Defendant to comply with the Preliminary Injunction, and warned her that the repercussions for failing to comply could be strict. Moreover, Fitness' attorney sent an email to Defendant on January 17, 2023, demanding

that she stop violating the Court's order, and notifying her that Fitness would bring the violations to the Court's attention. Finally, the police issued a "no trespass" warning to Defendant prior to the Court's entry of the Preliminary Injunction, and she was arrested once for trespassing after the issuance of the Preliminary Injunction, yet despite the involvement of the Court, Fitness' counsel, and the police, Defendant continues to engage in acts that violate the Preliminary Injunction.

Given the history of Defendant's repeated violations, there is simply no reason to believe that another order from the Court will compel compliance. Further, Fitness has no adequate remedy at law. Defendant's continuing conduct (including her attempts to gain access to and modify/change Fitness' computer equipment [both within and outside of California], her attempts to obtain Fitness tax information, her interference with Fitness' employee relations by filing a frivolous Petition for a restraining order against one of Fitness' current employees, her continued trespasses onto Fitness premises, and persistent email contacts with Fitness employees) are causing immeasurable harm to, and daily interruptions with, Fitness' business operations, its reputation, and its relationships with its employees and third parties.

As such, Fitness requests that the Court sanction Defendant in the amount of $500 for each future violation Defendant engages in. Such a sanction is not punitive, but is coercive, as Defendant can avoid the imposition of sanctions by simply complying with the Court's Order. *See generally, Aradia Women's Health Center, supra*, 929 F.2d at 532-533 (affirming a fine of $500 per day for future violations was civil and appropriate to coerce compliance); *Federal Trade Commission v. Productive Marking, supra,* 136 F.Supp.2d at 1112-1113 (holding that a per diem fine would provide incentive for the defendant to comply with the court's order.)

In addition, as prior Court orders, police warnings, and warnings from Fitness' counsel have had no effect, Fitness requests that the Court consider the sanction of

imprisonment should Defendant's violations continue in order to compel compliance with this Court's Order.

## VI. REQUEST TO HAVE PRELIMINARY INJUNCTION ENTERED AS A ORDER IN THE CLETS SYSTEM

As discussed above, Fitness has contacted law enforcement on several occasions due to Defendant's repeated violations of the Preliminary Injunction, however they have declined to detain Defendant as there is no restraining order entered into the California Law Enforcement Telecommunications System ("CLETS"). Fitness therefore requests that the Court enter the Preliminary Injunction into CLETS in order to provide law enforcement with the tools necessary to enforce the Court's Order.

## VII. CONCLUSION

For the reasons set forth herein. Plaintiff FITNESS INTERNATIONAL, LLC, respectfully requests that this Court grant this *ex parte* application, and issue an Order to Show Cause Why Defendant LEAH ALSPAUGH should not be held in contempt for violating the Court's November 1, 2022 Preliminary Injunction. Fitness further requests that the Court include in its Order a provision that Defendant will be subject to sanctions in the amount of $500 and/or imprisonment for each new violation of the Court's Order. Finally, Fitness requests that the Court enter the Preliminary Injunction into CLETS.

DATED: February 3, 2023

YOKA | SMITH, LLP

BY: ______________________

ALICE CHEN SMITH
CHRISTINE C. DE METRUIS
Attorneys for Plaintiff, FITNESS INTERNATIONAL, LLC