Alice Chen Smith, SBN 251654
asmith@yokasmith.com
Christine C. De Metruis, SBN 203610
cdemetruis@yokasmith.com
**YOKA | SMITH, LLP**
**445 South Figueroa St., 38th Floor**
**Los Angeles, California 90071**
**Phone: (213) 427-2300**
**Fax:     (213) 427-2330**

Attorneys for Plaintiff, FITNESS INTERNATIONAL, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FITNESS INTERNATIONAL, LLC <br><br> Plaintiff, <br><br> -vs- <br><br> LEAH ALSPAUGH and DOES 1 through 50, inclusive, <br><br> Defendant. | Case No.: 8:22-CV-01800-DOC-DFM <br><br> **FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS** <br><br> <u>Hearing</u> <br> Date: <br> Time: <br> Courtroom: 10A |

1

FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE:
CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS

# **TABLE OF CONTENTS**

I.    **INTRODUCTION** .................................................................... 5

II.   **RELEVANT FACTS** ............................................................. 7

    A. The Present Federal Action…………………………………………….7

    B. Relevant State Court Proceedings ................................. 10

    C. Defendant's Fraudulent Insurance Claim ....................... 11

    D. Defendant's Contacts With Esteban Meza ..................... 11

    E. Communications With Other Fitness Personnel ............ 13

    F. Defendant's Communications With Greenwood & McKenzie .................... 15

III.  **LEGAL AUTHORITY** ........................................................ 16

IV.  **FITNESS HAS MET ITS BURDEN BY CLEAR AND CONVINCING EVIDENCE** ........................................................ 17

    A. Infringement Of Fitness' Trademarks ........................... 17

    B. Representations That She Is The Owner, Representative Or Affiliate Of Fitness Or Its Brands ........................... 18

    C. Taking Action Or Filing Documents Under The Name LA Fitness, Fitness International, Or Pro Results .................. 18

    D. Contacting Fitness Personnel Regarding Fitness Members And Employees ................................. 19

    E. Coming Onto Fitness' Premises ................................. ..…………....19

V.   **THE COURT SHOULD IMPOSE SANCTIONS AGAINST DEFENDANT IN THE FORM OF IMPRISONMENT AND/OR MONETARY SANCTIONS ….....**………………………………………..…….. 20

VI.  **CONCLUSION**……..……………………….…………….....………... 22

# TABLE OF AUTHORITIES

**Cases**

*American Airlines, Inc. v. Allied Pilots Ass'n,*

  228 F.3d 574, 584 (5th Cir. 2000)................................................................ 20

*Aradia Women's Health Center v. Operation Rescue*

  929 F.2d 530, 532 (9th Cir. 1999)............................................................... 20

*F.T.C. v. Affordable Media*

179 F.3d 1228, 1239 (9th Cir. 1999) ............................................................ 17

*Federal Trade Commission v. Affordable Media*

  179 F.3d 1228,1239 (9th Cir. 1999)............................................................. 17

*Federal Trade Commission v. Lane Labs-USA, Inc.,*

  624 F.3d 575,591 (3rd Cir. 2010)................................................................ 17

*Federal Trade Commission v. Productive Marketing, Inc.*

  136 F.Supp.2d 1096, 1112 (C.D. Cal. 2001) ............................................... 20

*FTC v. Lane Labs-USA, Inc.*

624 F.3d 575, 591 (3d Cir. 2010) ................................................................. 17

*In re Crystal Palace Gambling Hall, Inc.,*

  817 F.2d. 1361,1365 (9th Cir. 1987)........................................................... 16

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation*

  10 F.3d 693,695 (9th Cir. 1993)................................................................... 17

*John T. ex rel. Paul T. v. Delaware County Intermediate Unit*

  318 F.3d 545,544 (3rd Cir. 2003)................................................................ 20

*Labor/Community Strategy Center v. Los Angeles County Metropolitan Trans.*

  *Authority*, 564 F.3d 1115,1123  (9th Cir. 2009) ...................................... 16

*Portland Feminist Women's Health Center v. Advocates for Life, Inc.,*

  877 F.2d 787,790 (9th Cir. 1989)................................................................ 20

*Shillitani v. U.S.*

384 U.S. 364, 370, 86 S. Ct. 1531, 1535 ..................................................... 16

3

FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE:
CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS

*Stone v. City & County of San Francisco*
968 F.2d 850, 856 (9th Cir. 1992) ................................................................ 16
*U.S. v. Powers*
629 F.2d 619, 626-627 (9th Cir. 1980) ........................................................ 20


Statutes
18 U.S.C. 401 ................................................................................................ 16

FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE:
CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Good cause exists to grant plaintiff FITNESS INTERNATIONAL, LLC's ("Fitness") *Ex Parte* application for an Order to Show Cause Re Contempt and for Monetary Sanctions or Imprisonment of defendant LEAH ALSPAUGH ("Defendant"). On March 6, 2023, this Court held Defendant in contempt for her continuing violations of the November 1, 2022 Preliminary Injunction.  [Dkt. 26, 41.]  However, Defendant's disregard of the Court Order continues.

As the Court may recall, Defendant failed to attend the March 6, 2023 hearing on Fitness' prior ex parte application for contempt.  However, that same day at 4:27 p.m. (while the contempt hearing was underway), Defendant sent a text message to Fitness employee, Esteban Meza, again in violation of the Preliminary Injunction.

Importantly, the Fitness representatives involved in the present litigation were unaware of Defendant's March 6, 20203 contact with Mr. Meza until March 27, 2023, when Fitness discovered that Defendant submitted an insurance claim for employee theft on behalf of "LA Fitness" under Fitness' insurance policy with Zurich American Insurance Company, identifying Mr. Meza as a "witness" in that claim.  Only then was it discovered that Defendant first texted Mr. Meza in July 2022 asking about his employment at Fitness, and continued texting and telephoning him in 2023 regarding moving the corporate offices and computer-related issues at Fitness.  Mr. Meza, who was unaware of the present litigation or who Defendant was, responded to Defendant's texts, however did not take any action.

Further, from March 13, 2023 to March 15, 2023, Defendant sent three (3) emails to Fitness' Vice President of Human Resources, Mindy Stokesberry, the last one stating that Ms. Stokesberry should file a report, as there was a 6 trillion drop in "our accounts," that Defendant had contacted the insurance company, and that Defendant has to start "paying rent on the new office on April first."  As per usual, all three emails were sent from Defendant's infringing email address, proresults411@gmail.com.

5

FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS

On March 15, 2023, a case management conference was held in the case *LA Fitness v. Fitness International* filed by Defendant in the Los Angeles Superior Court (Case No. 22STCV36005), during which Defendant repeated her false claims that she was the owner of LA Fitness including its 500 gyms.

On March 16, 2023, Defendant entered Fitness' Firestone Blvd. location to speak with Fitness' District Operations Manager, Jean Sanz.

On March 23, 2023, Defendant left a voicemail message for Fitness' Human Resources Manager, Mervet Shuber, asking about her "back pay" (Defendant has not been employed by Fitness since 2011).

Finally, between March 28 and April 4, 2023, Defendant contacted the owner of property leased by Fitness in Douglasville, Georgia, claiming *she* was the owner of the property, and that she wants to sell the property to her brother.

There can truly be no doubt that Defendant's continuing violations of the Preliminary Injunction are willful acts with the sole purpose of disrupting Fitness business operations and causing harm to Fitness. Defendant has been told on numerous occasions that she needs to stop misrepresenting her affiliation with Fitness and its brands, stop infringing on Fitness' trademarks, and cease her harassing conduct. Specifically,

- On December 5, 2022, this Court specifically warned Defendant that there would be strict consequences should she fail to comply with the Preliminary Injunction;

- On February 21, 2023, the Court again warned Defendant that there would be consequences if she continued to violate the Preliminary Injunction, including potential imprisonment;

- On March 6, 2023, this Court found Defendant in contempt for violating the Preliminary Injunction, and fined her $5,000;

- On March 15, 2023, counsel for Fitness sent an email to Defendant again demanding that she comply with the Preliminary Injunction;

- On March 22, 2023, Fitness employee Alexandra Garcia's Petition for a Civil Harassment Restraining Order against Defendant was granted by the Los Angeles Superior Court, and a Restraining Order prohibiting Defendant from contacting or coming within 50 yards of Ms. Garcia or her place of work (LA Fitness' downtown Los Angeles club) was issued.

Yet, despite the warnings, including the imposition of $5,000 sanctions which was issued to compel compliance, Defendant continues to infringe on Fitness' trademarks, continues to misrepresent her affiliation with Fitness and its brands, continues to harass Fitness employees, and continues her efforts to damage Fitness' business, reputation, and goodwill, all in violation of the November 1, 2022 Preliminary Injunction.

It is clear that Defendant has no intention of complying with the Court's Order. It is also clear that the imposition of monetary sanctions is insufficient to deter her conduct.  As such, Fitness respectfully requests that the Court grant the instant Application, and set an Order to Show Cause why Defendant should not be held in contempt and why she should not be imprisoned until she agrees to – and does – comply with the Court's Preliminary Injunction, or in the alternative, why she should not be sanctioned $10,000 for each future violation.  Further, Fitness will suffer irreparable harm to its business operations, employee relations, and reputation, if Defendant's conduct continues.  As such, Fitness requests that this Court schedule the hearing on the Order to Show Cause at the earliest possible date.

## II.    **RELEVANT FACTS**

### A. **The Present Federal Action**

Fitness filed its Complaint in the present action on October 3, 2022.  [Dkt. 1]  By way of its Complaint, Fitness alleges in pertinent part that Defendant, a former Fitness employee who has not worked at Fitness since 2013, is infringing on Fitness' federally-registered trademarks, "LA Fitness," "L.A. Fitness" and "Pro Results", by using confusingly similar names as both business names and as email addresses; that

7

FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS

Defendant is holding herself out to third parties as well as Fitness employees as the owner or representative of Fitness and its brands; that Defendant has trespassed on Fitness' property; and that Defendant has sent harassing and misleading emails to Fitness employees , amongst other things.  [*Id.*]

On November 1, 2022, this Court issued a Preliminary Injunction that enjoined Defendant from the following conduct until a final determination on the merits of this case by the trier of fact:

    1.   Infringing on Fitness' federally registered trademarks;

    2.   Making representations to any person or entity that she is the owner, agent, representative or affiliated with Fitness or any of its brands, including LA Fitness and Pro Results;

    3.   Taking any action, including filing any document with any federal or state agency under the name LA Fitness, Fitness International, LLC, Pro Results, or similar names;

    4.   Communicating with any of Fitness' employees, either by email, phone or in person; and

    5.   Entering, or coming within 50 feet of, any Fitness facility nationwide, including Fitness' gyms and corporate headquarters.

[Dkt. 26.]

On November 30, 2022, Defendant filed a Motion for Reconsideration, which was set for hearing on January 2, 2023.  [Dkt. 29.]  However, at the December 5, 2022 scheduling conference (at which Defendant appeared), the Court denied the reconsideration motion, stating in part:  "That preliminary injunction remains in place, Ms. Alspaugh, and please don't violate it."  [**Ex. 1** to the De Metruis Decl., at 6:18-25.]  When informed that Defendant had already violated the Preliminary Injunction, the Court stated:  "I'm going to be lenient in that regard, Ms. Alspaugh.  I'm just admonishing you.  I'm not seeking any intervention by the Court at this time, *but you are on fair notice concerning the injunctive relief that I've granted.  Please obey the*

*Court's order, because the repercussions of not doing so can be very strict, okay?"* [*Id.* at 7:3-9, emphasis added.*]*[1]

Despite the Court's warnings, Defendant refused to comply with the Preliminary Injunction, including her continued contacts with Fitness personnel, trespass onto Fitness' properties, misrepresentations to Fitness and third parties that she was the owner of LA Fitness, filing a Petition for a Workplace Harassment Restraining Order against one of Fitness' employees, attempting to add herself as a signor onto Fitness' bank accounts, and hiring a moving company to remove (steal) furniture from Fitness' corporate offices, amongst other violations.  Given the continuing violations, on February 3, 2023, Fitness filed an Ex Parte Application for Issuance of Order to Show Cause re: Contempt and For Monetary Sanctions and/or Imprisonment of Defendant.  [Dkt. 35.]

The hearing on Fitness' prior Ex Parte Application was conducted on February 21, 2023, during which the Court ordered Defendant to comply with the terms Preliminary Injunction, or face the possibility of arrest.  [De Metruis Decl., at ¶5, and Dkt. 38.] *The very next day*, February 22, 2023, counsel for Fitness informed the Court that Defendant went to Bank of America to attempt to have herself added as a signor to Fitness' bank Account.  [De Metruis Decl., at ¶6, and **Ex. 2** thereto.]  As a result, the Court set a status conference for March 6, 2023.  [Dkt. 39.]

Defendant failed to appear at the March 6, 2023 contempt hearing.  Fitness presented six witnesses, including Preeti Manchanda of Bank of America, Stacey Rounsavall of Bank of the West, Jeff Lin of Bank of the West, and Fitness employees Mindy Stokesberry, Alexandrea Garcia, and Jean Sanz.  At the conclusion of the hearing, the Court found Defendant in contempt of Court for her repeated violations of

---

[1] Defendant also continues to ignore the Court's direction to file her answer to Fitness' Complaint within seven (7) days of the December 5, 2022 hearing [**Ex. 1** to the De Metruis Decl., at 12:3-8, and Dkt. 30], as well as the Court's February 21, 2023 Order to file an answer by February 28, 2023 [Dkt. 38].  As such, the case is still not at issue.

its November 1, 2022 Order re Preliminary Injunction, and ordered Defendant toto pay monetary sanctions in the amount of $5,000.  [Dkt. 40, 41.]

Despite being held in contempt and sanctioned for her continuing conduct, Defendant continues to ignore the Court's Order and refuses to comply with her obligations under the Preliminary Injunction as discussed below.

### B.   Relevant State Court Proceedings

As previously advised, on November 15, 2022, Defendant filed a complaint entitled *LA Fitness and Leah Alspaugh v. Fitness International, LLC*, Los Angeles Superior Court, case no. 22STCV36005. [Dkt. 35-4.] On January 11, 2023, Defendant filed a first amended complaint in that matter entitled *LA Fitness v. Fitness International, LLC and Esporta Fitness*. [Dkt. 35-5.] A case management conference in that matter was held on March 15, 2023. Counsel for Fitness appeared telephonically. During the conference, Defendant misrepresented to the Court that she was the owner of LA Fitness its 500 gyms. [De Metruis Decl., at ¶7.] At the conclusion of the case management conference, Judge Hammock dismissed Defendant's state court action with prejudice. [Id., and **Ex. 3** thereto.]

On February 17, 2023, Fitness Operations Manager at its Downtown Los Angeles LA Fitness club, Alexandra Garcia, filed a Petition for Civil Harassment Restraining Order against Defendant, for, amongst other things, Defendant's repeated trespass into Fitness' facilities, her attempts to access Fitness computers, and her misrepresentations that she was the owner of Fitness. [De Metruis Decl., at ¶8, and **Ex. 4** thereto.] The hearing on Ms. Garcia's Petition was held on March 22, 2023, during which Defendant again misrepresented that she was the owner of LA Fitness. [De Metruis Decl., at ¶ 9.] At the conclusion of the hearing, the Court granted Ms. Garcia's Petition, and issued a Civil Harassment Restraining Order After Hearing, which prohibits Defendant from contacting Ms. Garcia, or coming within 50 yards of Ms. Garcia or Ms. Garcia's workplace. [Id., and **Ex. 5** thereto.]

///

FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS

### C.     Defendant's Fraudulent Insurance Claim

On March 27, 2023, Fitness received notice from its third party administrator, Corvel, that Zurich American Insurance Company received a new loss for Fitness that was submitted by "Leah Alspaugh."  The information received by Fitness includes a printout of the insurance claim made by Defendant, which indicates a date of loss of February 15, 2023, and states in pertinent part:

> Insured states EE are refusing to allow the owner in the company, the EEs are destroying the computers and are messing up the internet.  Also, there is 583,000,000 dollars missing from the account.   EEs are also destroying equipment also.  The Employees are LA Fitness workers that is [*sic*] doing this.

[Megan Stokesberry Decl., at ¶2 and **Ex. 1** thereto.]

The contact information for the claim is listed as Leah Alspaugh, Telephone (323) 762-6406 (which is Defendant's cell phone number), and the email address of "proresults411@gmail.com (which is the infringing email address Defendant uses). [Megan Stokesberry Decl., at ¶3, and **Ex. 1** thereto.]  It further identifies a "witness" as "Estabon Mesa."  [Megan Stokesberry Decl., at ¶4, and **Ex. 1** thereto.]  The claim was forwarded to Fitness after neither Zurich nor Corvel could verify the accuracy of the information provided in the claim.  This was not a claim filed by or on behalf of Fitness, and the statements made in the claim are false.  [Megan Stokesberry Decl., at ¶5.]

### D.     Defendant's Contacts With Esteban Meza

As noted above, the fraudulent insurance claim submitted by Defendant to Zurich identified a witness as "Estabon Mesa," which Fitness determined to be Esteban Meza, a Construction Project Manager at Fitness who has worked with Fitness for 22 years. [Meza Decl., at ¶1.]   The March 27, 2023 insurance claim was the first notice that persons involved in the present litigation had regarding Defendant's contacts with Mr. Meza.  [Megan Stokesberry Decl., at ¶4; Mindy Stokesberry Decl., at ¶5.]  Mr. Meza

was contacted by Mindy Stokesberry, Vice President of Human Resources at Fitness, and was informed that his name appeared on insurance claim filed by Defendant.  Mr. Meza had no knowledge of the insurance claim or the basis for the claim, and prior to being contacted by Ms. Stokesberry, had no knowledge of the pending litigation. [Meza Decl., at ¶2.]

Mr. Meza was first contacted by Defendant on July 19, 2022, through Linkedin, when he received two messages 6 minutes apart asking if he still worked for Fitness. He responded the following day confirming he did, to which Defendant responded asking for his contact information so she could reach out to him as her "email is locked out."  Approximately a half hour later, she messaged Mr. Meza again stating "Can you go back to work at the corporate office." Mr. Meza did not respond to either text. [Meza Decl., at ¶3, and **Ex. 1** thereto.]

On or about February 20, 2023, Defendant messaged Mr. Meza on Skype from the Downtown Los Angeles LA Fitness location, identifying herself only as "Leah," provided her phone number, and asking him to contact her.  Mr. Meza did not know who it was, and texted her the following day asking if there was anything she needed. [Meza Decl., at ¶4, and **Ex. 2** thereto.] They spoke later that day, and Defendant discussed moving the corporate office,[1] IT, building access, and what was holding things up.  Mr. Meza stated he did not know, would look into it and get back to her, which he did not do. [Meza Decl., at ¶5.]  Shortly this conversation, Mr. Meza was informed by his wife, who is a District Operations Manager at Fitness, that there were instructions from Fitness corporate to keep Defendant out of the clubs. [Meza Decl., at ¶6.]

Defendant next texted Mr. Meza on February 27, 2023, telling him to make sure he put up a firewall on his computer, stating she will be in touch with him, and

---

[1] As previously advised, Defendant actually hired movers to remove furniture from Fitness' corporate offices on February 1, 2023.  [Dkt. 35-12, at ¶7.]

FITNESS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE RE: CONTEMPT AND FOR IMPRISONMENT OF DEFENDANT AND/OR MONETARY SANCTIONS

sending him two photographs of a rainbow.  Mr. Meza did not respond.  [Meza Decl., at ¶7, and **Ex. 2** thereto.]

Defendant last texted Mr. Meza on March 6, 2023 at 4:27 p.m., stating she will call him the following day, and further stating "please let everyone know who is with the city clubs that the citi bank is not for sale to anyone and no one from an insurance company would buy shares.  You know how to operate a business we maybe a sweat shop but only at a gym."  Mr. Meza did not respond.  [Meza Decl., at ¶8, and **Ex. 2** thereto.]

### E.    Communications With Other Fitness Personnel

On March 13, 2023, Defendant sent Mindy Stokesberry two emails 3 minutes apart.  The first email was sent at 12:00 p.m., and states only "Hi mindy, 7 for all mankind. in good health, leah."  [Mindy Stokesberry Decl., at ¶2, and **Ex. 1** thereto, typos in original.]  The second email was sent at 12:03 p.m., and states "hi mindy, Have you followed up with vista la fitness we are switching over from esporta. They were in the hall of records goofing around. In good health, leah."  [Stokesberry Decl., at ¶3, and **Ex. 2** thereto, typos in original.]

On March 15, 2023, Defendant sent Ms. Stokesberry another email, which states:

> I want to let you know according that as of February 15 and 16 there was a 6 trillion dollar drop out our accounts. I encourage you deeply to file a report. What happened was is the club in Los Angeles allowed someone named mike to install a vpn 3rd party network into out intranet and they are able to use that to collect payments and financial data from our system. This is why I also encourage you to put up a firewall.  I have the reports on my end I will do my best. The insurance company has been contacted. Do you know a min ling who is representing herself as the la fitness insurance agent. This is a serious matter.  I HAVE TO

START PAYING RENT ON THE NEW OFFICE
STARTING APRIL FIRST lets make it happen.

[Mindy Stokesberry Decl., at ¶4, and **Ex. 3** thereto, typos and emphasis in original.]

Given the content of Defendant's March 15, 2023 email to Ms. Stokesberry, counsel for Fitness, Alice Chen Smith, Esq., sent an email to Defendant again demanding that she stop her infringement of Fitness' trademarks, stop representing that she owns or is otherwise affiliated with Fitness, stop taking action on behalf of Fitness or its brands, including LA Fitness, and advising that Defendant is solely responsible for any lease agreement she enters into.  [De Metruis Decl., at ¶10, and **Ex. 6** thereto.]

On March 16, 2023, Defendant entered Fitness' Firestone Blvd. location in Downey to speak with Fitness' District Operations Manager, Jean Sanz.  Mr. Sanz's position requires him to travel to Fitness' various gym locations in the Los Angeles area.  He has no set schedule regarding which locations he will be at during any given week.  In order for Fitness employees to be able to contact him during working hours, Mr. Sanz would input his location into Fitness' computer system each day.  The computer system is to be accessed by Fitness personnel only.  Despite the fact that Mr. Sanz has no fixed schedule Defendant was somehow able to track Mr. Sanz on three (3) separate occasions in 2023, most recently on March 16, 2023.  To date Fitness has not been able to determine how Defendant was able to track Mr. Sanz's location on those three occasions, however it is believed that Defendant did so by accessing his location information on Fitness' computers.  As a result, Mr. Sanz no longer inputs his location on Fitness' computers.  [Sanz Decl., ¶2.]

On March 23, 2023, Defendant left a voicemail message for Fitness' Human Resource Manager, Mervet Shuber, asking about Fitness' worker's comp insurance for her back pay.  [Shuber Decl., at ¶2, and the link to the voicemail message, below.]

[https://yokasmith.sharefile.com/d-s63148a39760b4f718aaefddd63af3983]

///

///

**F.      Defendant's Communications With Greenwood & McKenzie**

Fitness owns and operates gyms throughout North America.  One of its LA Fitness gyms is located at 3020 Chapel Hill Road in Douglasville, Georgia (the "Property.")  Fitness leased the Property continuously from 2008 to the present.  Fitness initially leased the Property from Shops at Chapel Hill, LLC, in April 2008.  In or around January 2015, Fitness was notified the Property was conveyed to ARCP MT Douglasville (Chapel Hill) GA, LLC.  On April 1, 2019, the Property was conveyed to Fitness, who on August 15, 2019, conveyed the Property to the current owner, Fitness Investors Douglasville, LLC, c/o Greenwood & McKenzie Real Estate Investment. [Alexander Decl., at ¶2; Tripp Decl., at ¶2.]

On March 28, 2023, Charles Tripp, an Assistant Property Manager at Greenwood & McKenzie, received a telephone call from someone who identified herself as "Leah Alspaugh."  Defendant stated she had questions about the ownership of the Chapel Hill Road Property, as she claimed to be the owner of that property since 2012, and was selling the property to her brother, however her title company identified Greenwood & McKenzie as the owner since 2019.  Defendant informed Mr. Tripp that this was happening with her Long Beach property, as well.  Mr. Tripp told her he would take down her information and pass it to the owners.  [Tripp Decl., at ¶¶1, 3.]  Mr. Tripp's colleague, Leah Mogabgab, did a google search of Defendant's name, discovered the present lawsuit, and contacted Fitness about Defendant's inquiry.  [Tripp Decl., at ¶4.]

On March 29, 2023, Defendant called and spoke again with Mr. Tripp, stating that no one had contacted her.  Mr. Tripp again advised that her message was elevated to the owners.  [Tripp Decl., at ¶5.]

On April 3, 2023, Defendant left a voicemail message for Mr. Tripp, again attempting to "clear up" the situation regarding the ownership of the Chapel Hill Property.  Mr. Tripp did not return Defendant's call.  [Tripp Decl., at ¶6.]

On April 4, 2023, Defendant went to Greenwood & McKenzie's offices in Tustin, California, stating she needed to speak with someone regarding the ownership of the

Chapel Hill Road Property.  Mr. Tripp and his supervisor, Matt Anderson, informed her that he could not assist her due to the pending litigation, and advised her to contact Diann Alexander at Fitness.  Defendant informed Mr. Tripp that Ms. Alexander did not work for her.[1]  Mr. Tripp again informed Defendant that no one could help her, and Defendant ultimately left.  [Tripp Decl. at ¶7.]  The April 4, 2023 visit to Greenwood & McKenzie's offices unnerved Mr. Tripp who was concerned for his safety.  [Tripp Decl. at ¶8.]

### III.  **LEGAL AUTHORITY**

This Court has the inherent authority to enforce compliance with its orders through civil contempt.  *Shillitani v. U.S.,* 384 U.S. 364, 370, 86 S. Ct. 1531, 1535. (1966).  *See also* 18 U.S.C. 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … (3) Disobedience or resistance to its lawful … order….")  To establish civil contempt, the moving party has the burden of establishing "(1) that [the opposing party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence."  *Labor/Community Strategy Center v. Los Angeles County Metropolitan Trans. Authority*, 564 F.3d 1115, 1123 (9th Cir. 2009) (citation omitted). The violator's intent is irrelevant, nor does the violation need to be willful.  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (citations omitted); *see also Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) ("Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.")  Rather, an order of civil contempt is appropriate where a person fails to take all reasonable steps within his/her power to comply.  *Crystal Palace, supra,* 817 F.2d. at 1365 (citations omitted).

---

[1] While it is true that Ms. Alexander does not work for *Defendant,* Ms. Alexander has been employed by Fitness since 2011, and is currently the Director of Lease Administration, a position she has held since 2014.  [Alexander Decl., at ¶1.]

Once the movant meets its initial burden, the burden shifts to the non-moving party to demonstrate either an inability to comply despite a good faith effort to do so, or that he/she has substantially complied with the order, and that any violations were merely technical or inadvertent.  *In re Dual-Deck Video Cassette Recorder Antitrust Litigation,* 10 F.3d 693, 695 (9th Cir. 1993); *Federal Trade Commission v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999); *Federal Trade Commission v. Lane Labs-USA, Inc.*, 624 F.3d 575, 591 (3d Cir. 2010).

## IV.   <u>FITNESS HAS MET ITS BURDEN BY CLEAR AND CONVINCING EVIDENCE</u>

The November 1, 2022 Preliminary Injunction is clear and unambiguous: Defendant is enjoined from the following conduct until there is a trial on the merits: (1) infringing on Fitness' federally registered trademarks; (2) representing herself to anyone that she is the owner, representative or otherwise affiliated with Fitness or any of its brands, including LA Fitness and Pro Results; (3) taking any action or filing any document under the name LA Fitness, Fitness International, LLC, or Pro Results; (4) contacting Fitness' employees regarding employees or members; and (5) entering or coming within 50 feet of any Fitness facility, including its gyms and its corporate offices.  [Dkt 26.]

Despite this Court finding Defendant in contempt of court on March 6, 2022 for the same or similar conduct, Defendant continues to violate each of the prohibitions set forth in the Preliminary Injunction.

### A.   **Infringement Of Fitness' Trademarks**

Defendant continues to infringe on Fitness' federally registered trademarks "LA Fitness", "L.A. Fitness", and "Pro Results".  As discussed above, Defendant maintained her state court action entitled *LA Fitness, LLC v. Fitness International, LLC*, until March 15, 2023, when it was dismissed with prejudice by Los Angeles Superior Court Judge Hammock.  Defendant further filed a fraudulent insurance claim as "LA Fitness" with Zurich American Insurance Company.  Moreover, Defendant continues to use email

addresses that include "proresults" when contacting Fitness employees and third parties while discussing Fitness' business operations in a clear attempt to create confusion as to her affiliation with Fitness and its brands.

### B.    Representations That She Is The Owner, Representative Or Affiliate Of Fitness Or Its Brands

Defendant continues to misrepresent herself as the owner, representative or affiliate of LA Fitness and Pro Results to both third parties and to Fitness employees. At the March 15, 2023 case management conference in Defendant's state court action against Fitness, Defendant represented to the Court that she was the owner of LA Fitness and its 500 gyms.  Defendant made similar misrepresentations to Commissioner Cohen of the Los Angeles Superior Court during the March 22, 2023 hearing on Ms. Garcia's Petition for a Civil Harassment Restraining Order.  Defendant further filed a fraudulent insurance claim as "LA Fitness" with Zurich American Insurance Company, and represented herself as the owner of the LA Fitness property in Douglasville, Georgia, to the owner's representative at Greenwood & McKenzie.    Through her communications with Fitness employees Mindy Stokesberry and Esteban Meza regarding Fitness' business operations, Defendant continues to misrepresent herself as an employee and/or owner of Fitness.  Finally, Defendant's continued use of the email address proresults411@gmail.com in her communications with Fitness personnel and third parties regarding Fitness business operations, is a further attempt to hold herself out to be affiliated with Fitness' brand, Pro Results.

### C.    Taking Action Or Filing Documents Under The Name LA Fitness, Fitness International, Or Pro Results

Again, Defendant's continuation of the state court action "LA Fitness, LLC v. Fitness International, LLC" and her misrepresentations during the case management conference that she was the "owner" of LA Fitness and its gyms, are clear improper attempts to take action on behalf of "LA Fitness" in violation of the Preliminary Injunction.    Moreover, Defendant filed a fraudulent insurance claim with Zurich

18

American Insurance Company as a representative of LA Fitness, falsely claiming that employees were not allowing the "owner" into the company, and that employees were stealing funds and destroying property.  Defendant is also attempting to sell the property on which one of LA Fitness' clubs is located in Georgia.  Finally, as discussed above, Defendant continues to falsely represent herself as the owner or representative of Fitness and it brands in her communications with both Fitness personnel, Los Angeles Superior Court judges, and outside venders in order to have such persons take actions which interfere with Fitness' business operations and property.

**D.      Contacting Fitness Personnel Regarding Fitness Members And Employees**

As discussed above, Defendant continues to contact Fitness personnel by emails and telephone calls, including Mindy Stokesberry, Mervet Shuber, and Esteban Meza.

**E.      Coming Onto Fitness' Premises**

In addition to the numerous violations of this provision previously reported, Defendant entered Fitness' Firestone location on March 16, 2023, to speak with its District Operations Manager, Jean Sanz.  As discussed above, this was the *third time* this year Defendant was able to track Mr. Sanz's location despite the fact that his position requires him to travel to different Fitness locations in the Los Angeles area, and this he has no set schedule.  It is believed that Defendant was able to determine where Mr. Sanz would be on those 3 occasions by improperly accessing the information on Fitness' computer system.

Fitness has met its initial burden showing by clear and convincing evidence that Defendant has blatantly and repeatedly violated the November 1, 2022 Preliminary Injunction.  Defendant's actions were wholly voluntary, deliberate, and demonstrate a willful disregard of her duty to comply with this Court's Order.  There is absolutely no excuse for Defendant's refusal to comply with the Preliminary Injunction, especially after this Court has already held her in contempt for similar improper conduct.  As such, Fitness requests that the Court grant the present motion, and require Defendant to show

cause why she should not be held in civil contempt.

## V.     THE COURT SHOULD IMPOSE SANCTIONS AGAINST DEFENDANT IN THE FORM OF IMPRISONMENT AND/OR MONETARY SANCTIONS

To the extent the Court find Defendant in contempt of the Court's Preliminary Injunction, Fitness respectfully requests that the Court use all of its available power to stop the continued willful disobedience of its authority in the form of imprisonment.

District courts have discretion in determining the appropriate sanctions for civil contempt. *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 544 (3rd Cir. 2003)   Civil sanctions are permitted for two purposes: "(1) to coerce defendant into compliance with the court's order; and (2) to compensation the complainant for losses sustained as a result of the contumacious behavior." *Federal Trade Commission v. Productive Marketing, Inc.,* 136 F.Supp.2d 1096, 1112 (C.D. Cal. 2001) (citation and internal quotation omitted).   "Where a fine is imposed as a contempt sanction, it is considered remedial, and therefore civil, when the defendant can avoid paying the fine simply by performing the … act required by the court's order." *Aradia Women's Health Center v. Operation Rescue*, 929 F.2d 530, 532 (9th Cir. 1999) (citation and internal quotation omitted); *see also Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 877 F.2d 787, 790 (9th Cir. 1989) ("If the sanction is a fine payable to the court, it is remedial if the defendant can avoid paying the fine by performing the act required by the court's order.")   Moreover, where, as here, the failure to perform an act is wholly within the Defendant's power perform, the Court may also imprison the Defendant until he or she agrees to comply with the Court's Order. *American Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 584 (5th Cir. 2000).   In such cases, the term of imprisonment is considered civil, nor criminal, as it is designed to compel future compliance with the court's orders, rather than punish the contemnor for past violations.   *U.S. v. Powers,* 629 F.2d 619, 626-627 (9th Cir. 1980).   Here, Defendant's continuing violations of the Preliminary Injunction warrant the imposition

1    of such remedial sanctions to coerce compliance with the Court's Order.

2         As discussed above, there can be no dispute that Defendant has engaged, and

3    continues to engage, in willful violations of the Preliminary Injunction.  This Court

4    admonished Defendant to comply with the Preliminary Injunction on December 5, 2022

5    and again of February 21, 2023, yet Defendant failed to comply.  On March 6, 2023,

6    the Court held Defendant in contempt of Court and imposed monetary sanctions in the

7    amount of $5,000, yet within one week, Defendant was again emailing Fitness'

8    personnel, misrepresenting herself as the owner of LA Fitness in state court, filing a

9    fraudulent insurance claim, and harassing the employees of Greenwood & McKenzie.

10        Given the history of Defendant's repeated violations, there is simply no reason to

11   believe that another order from the Court, or even in imposition of monetary sanctions,

12   will compel compliance with the Court's Order.  Fitness has no adequate remedy at law.

13   Defendant's continuing conduct – including filing a fraudulent insurance claim wherein

14   she accuses Fitness employees of stealing money, her bizarre and harassing emails to

15   Fitness personnel, and her harassment of the employees of Greenwood & McKenzie -

16   are causing immeasurable harm to, and daily interruptions with, Fitness' business

17   operations, its reputation, and its relationships with its employees and third parties.

18        This Court has already imposed monetary sanctions in the amount of $5,000 in

19   an attempt to get Defendant to comply.  As discussed above, the monetary sanctions

20   had no impact on Defendant's conduct.  Defendant simply refuses to comply with the

21   Preliminary Injunction.  As such, Fitness requests that the Court consider the sanction

22   of imprisonment in order to compel compliance with this Court's Order.  Alternatively,

23   Fitness requests that the Court sanction Defendant in a greater amount of $10,000, and

24   order Defendant report back to the Court within 5 days that the sanctions have been

25   paid.

26   ///

27   ///

28   ///

## VI.     <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff FITNESS INTERNATIONAL, LLC, respectfully requests that this Court grant this *ex parte* application*,* and issue an Order to Show Cause Why Defendant LEAH ALSPAUGH should not be held in contempt for violating the Court's November 1, 2022 Preliminary Injunction.  Fitness further requests that the Court include in its Order a provision that Defendant will be subject to imprisonment and/or monetary sanctions in order to compel her compliance with the Court's November 1, 2022 Preliminary Injunction.

DATED: April 6, 2023                         YOKA | SMITH, LLP

BY:  _____
                         ALICE CHEN SMITH
                         CHRISTINE C. DE METRUIS
                         Attorneys for Plaintiff, FITNESS
                         INTERNATIONAL, LLC