Alice Chen Smith, SBN 251654
asmith@yokasmith.com
Christine C. De Metruis, SBN 203610
cdemetruis@yokasmith.com
**YOKA | SMITH, LLP**
**445 South Figueroa St., 38th Floor**
**Los Angeles, California 90071**
**Phone:  (213) 427-2300**
**Fax:       (213) 427-2330**

Attorneys for Plaintiff, FITNESS INTERNATIONAL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITNESS INTERNATIONAL, LLC, <br><br> Plaintiff, <br><br> -vs- <br><br> LEAH ALSPAUGH and DOES 1 through 50, inclusive, <br><br> Defendant. | Case No.: 8:22-CV-01800-DOC-DFM <br><br> **FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH** <br><br> [Filed concurrently with Declarations of Mindy Stokesberry and Christine C. De Metruis] <br><br> <u>Hearing</u> <br> Date:         June 5, 2023 <br> Time:         9:00 a.m. <br> Courtroom:  10A |

///
///
///
///
///

1

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH

# TABLE OF CONTENTS

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION ABD FACTUAL BACKGROUND......................4

II. RELEVANT FACTS...............................................................5
    A. Pre-Trial Procedings .......................................................5
    B. Jury Trial and Permanent Injunction................................6
    C. Alspaugh's Violations Of The Court's Order Since May 8, 2023 ..8

III. LEGAL AUTHORITY ...........................................................11

IV. ALSPAUGH HAS REPEATED AND WILLFULLY VIOLATED THIS COURT'S PERMANENT INJUNCTIONCONCLUSION........14

V. CONCLUSION....................................................................17

2

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH

# TABLE OF AUTHORITIES

**CASES**                                                                       Page(s)

*In re Crystal Palace Gambling Hall, Inc.,*
  817 F.2d. 1361, 1365 (9th Cir. 1987) .................................................. 11

*Labor/Community Strategy Center v. Los Angeles County Metropolitan
Trans.    Authority,*
  564 F.3d 1115, 1123 (9th Cir. 2009) .................................................. 11

*Shillitani v. U.S.,* 384 U.S. 364, 370-371, 86 S. Ct. 1531, 1535 ........... 11

*Stone v. City & County of San Francisco,*
  968 F.2d 850, 856 (9th Cir. 1992) ...................................................... 11

*U.S. v. Powers*
  629 F.2d 619, 627 (9th Cir. 1980) ................................................. 12,13

*U.S. v. Rose*
  806 F.2d 931, 933 (9th Cir. 1986) ................................................. 12, 14

*United States v. Alter*
  482 F.2d 1016, 1023 (9th Cir. 1973) ..................................................... 13

**STATUTES**

Criminal Procedure Rule 42 ................................................................ 12,13

3

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH

# STATEMENT IN SUPPORT OF CONTEMPT SANCTIONS

## I. INTRODUCTION AND FACTUAL BACKGROUND

Defendant LEAH ALSPAUGH's ("Alspaugh") conduct since the conclusion of trial in this matter is proof positive that no action taken by this Court to date - including the issuance of Preliminary Injunction, the prior warnings to comply, the prior order holding her in contempt of court, the prior imposition of monetary sanctions, a jury verdict imposing liability for her conduct, and the Court's entry of a Permanent Injunction - will deter Alspaugh from her relentless infringing, fraudulent and harassing conduct against plaintiff FITNESS INTERNATIONAL, LLC ("Fitness"). Alspaugh continues to harass Fitness employees by contacting them by phone, email and U.S. mail, filing two separate legal actions in state courts under the name "LA Fitness" against Fitness seeking to evict Fitness from various properties in Los Angeles and Orange County, and issuing a subpoena to Fitness' Senior Vice President and Legal Counsel Robert Wilson for a personal appearance and production of financial documents. Moreover, Alspaugh has created a new infringing email account – proreults@gmail.com – which is a transparent attempt to avoid a claim that she is infringing on Fitness' federally protected trademark, "Pro Results", by deleting the first "s" in the word "results".

As discussed herein, Alspaugh's conduct is deliberate, willful, and calculated to disrupt Fitness' business operations and cause harm to Fitness reputation and goodwill. And there is no end in sight - Alspaugh's past and current conduct make it clear that she has no intention of stopping. Given Alspaugh's repeated and blatant disregard for this Court's Orders, Fitness respectfully requests that the Court hold Alspaugh in contempt of Court. Moreover, this Court has given Alspaugh numerous warnings, and even imposed monetary sanctions (which she failed to pay), all of which she has chosen to ignore. As the Orders, warnings, monetary sanctions, and jury verdict have had no effect on Alspaugh's conduct to date, Fitness requests that the Court incarcerate Alspaugh in order to compel her to comply with the Court's orders.

4

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH

## II. RELEVANT FACTS

### A. Pre-Trial Proceedings

Fitness filed its Complaint against Alspaugh in this action on October 3, 2022, alleging that Alspaugh was infringing on Fitness' federally protected trademarks ("L.A. Fitness", "LA Fitness" and "Pro Results"), was holding herself out to third parties as well as Fitness employees as the owner or representative of Fitness and its brands, was trespassing on Fitness' property, and was sending harassing and misleading emails to Fitness employees, amongst other things. [Dkt. 1.] By way of its Complaint, Fitness sought compensatory damages, punitive damages, and a permanent injunction enjoining Alspaugh from engaging in her infringing, fraudulent and harassing conduct. [*Id.*]

On November 1, 2022, this Court entered a Preliminary Injunction that enjoined Alspaugh from engaging in certain conduct, including infringing on Fitness' trademarks, representing herself to be the owner of or affiliated with Fitness or its brands, taking any action under the Fitness or its brands, communicating with Fitness employees, and from entering or coming within 50 feet of any Fitness location. [Dkt. 26.]

At the December 5, 2022, scheduling conference, the Court reminded Alspaugh that the Preliminary Injunction was in place, stating in pertinent part "you are on fair notice concerning the injunctive relief that I've granted. Please obey the Court's order, because the repercussions of not doing so can be very strict, okay?" [De Metruis Decl., at ¶2, and **Ex. 1** thereto at 7:3-9.]

Despite the Court's admonition, Alspaugh continued to violate the Preliminary Injunction, and Fitness filed an Ex Parte Application for Issuance of an Order to Show Cause re: Contempt. [Dkt. 35.] Alspaugh attended the February 21, 2023 hearing on Fitness' Ex Parte. Following the hearing, the Court issued an Order stating in pertinent part, "The Court ORDERS defendant to comply with the terms of the Court's ORDER RE PRELIMINARY INJUNCTION [26] *under penalty of arrest.*" [Dkt. 38, emphasis added.] The very next day, February 22, 2023, counsel for Fitness informed the Court

that Defendant went to Bank of America to attempt to have herself added as a signor to Fitness' bank Account. [De Metruis Decl., at ¶3, and **Ex. 2** thereto.] As a result, the Court set a contempt hearing for March 6, 2023. [Dkt. 39.]

Alspaugh refused to appear at the March 6, 2023 hearing. After Fitness presented its evidence, including the testimony of six witnesses and the introduction of documentary evidence, the Court found Alspaugh in contempt of Court for her repeated violations of the Preliminary Injunction, and ordered Defendant to pay monetary sanctions in the amount of $5,000.[1] [Dkt. 40, 41.]

However, Alspaugh continued to violate the Preliminary Injunction by continuing to harass Fitness employees, trespassing on Fitness' property, opening up a bank account in Fitness' name, and filing a fraudulent insurance claim on LA Fitness' behalf. As such, Fitness filed another Ex Parte Application re Contempt on April 6, 2023, followed by numerous supplemental briefs and declarations as Alspaugh continued her violations. [Dkt. 47, 51, 52, and 55.] However, as trial was a month away, no further contempt hearings on Alspaugh's continuing violations was set.

### B. Jury Trial and Permanent Injunction

A two-day jury trial was held in this case May 2 and 3, 2023 wherein Alspaugh had the right to cross-examine witnesses, present evidence, call her own witnesses, and testify. On May 4, 2023, the jury returned the Special Verdict form, finding that Alspaugh infringed on Fitness' valid trademarks, including "LA Fitness", "L.A. Fitness", and "Pro Results"; that Alspaugh used in commerce the false designation of the original of LA Fitness LLC; that Alspaugh knowingly made false representations to Fitness personnel and third parties; and that Alspaugh interfered with Fitness' contracts and prospective economic advantage. [Dkt. 79.] The jury awarded Fitness $200,800 in compensatory damages, and $400,600 in punitive damages. [*Id.*] Based on the jury's

---

[1] To date, Alspaugh has not paid the monetary sanctions.

findings, the Court entered judgment on the special verdict form on May 8, 2023. [Dkt. 82.]

On May 8, 2023, the Court also entered an Order re: Permanent Injunction, which permanently enjoined Alspaugh from, amongst other things:

- Infringing on Fitness' federally registered trademarks, including "LA Fitness", "L.A. Fitness" and "Pro Results;
- Making representations to any person or entity that Alspaugh is the owner or representative of, or otherwise affiliated with, Fitness or any of its brands, including LA Fitness and Pro Results;
- Taking any action, including filing any document, in any federal or state court on behalf of or under the name of Fitness or any of its brands, including LA Fitness;
- Contacting Fitness employees by email, phone or in person;
- Using or maintaining any email address that contains the name "Pro Results", "LA Fitness," and/or "Fitness International," or any confusingly similar names; and
- Coming within 50 feet of any of Fitness' facilities, including its gyms and corporate offices.

[Dkt. 81.]

In addition to enjoining Alspaugh from engaging in certain conduct, the Court's Order re Permanent Injunction further required Alspaugh to file specific information with the Court within 20 days in order to help untangle all of the mess she created through her fraudulent actions, including: (1) evidence that she closed all bank accounts she opened under the name LA Fitness or another Fitness brand name; (2) evidence that she cancelled the federal employer ID number she received from the Internal Revenue Service under the name "Leah Alspaugh Fitness International"; (3) Evidence that all of the business registrations she filed with the California Secretary of State using the names LA Fitness or Fitness International have been cancelled; (4)

copies of all contracts she entered into under the names Fitness International, LLC, LA Fitness or Pro Results, and evidence that such contracts have been cancelled. [*Id.*]

### C. Alspaugh's Violations Of The Court's Order Since May 8, 2023

Alspaugh began violating the Permanent Injunction immediately after it was entered by the Court.

At 9:04 p.m. on May 8, 2023, Alspaugh sent an email to Fitness' Vice President of Human Resources, Mindy Stokesberry, with the message "Keep it fly." [Declaration of Mindy Stokesberry ("Stokesberry Decl."), at ¶2, and **Ex. 1** attached thereto.] The email was sent from an email address proreults411@gmail.com, which is nearly identical to Fitness' federally-registered trademark "Pro Results," however Alspaugh removed the first "s" in the word "results." [*Id.*]

On May 10, 2023, Alspaugh sent another email to Ms. Stokesberry, again using the new infringing proreults411@gmail.com address, which states:

> Do we sill nave a Barbie on payroll? Did we ever use Todd mcseeveneys name at LA fitness Hollywood as free training on proresults checks? Is there someone in Hollywood using Caroline Kim's info because she is on vacation. I found some trainers at Hollywood giving out vouchers signed with Todd mcseeveneys name on it and I also remembered how Barbie was on our adp payroll account. Thus might be some kind of bank fraud.

[Mindy Stokesberry Decl., at ¶3, and **Ex. 2** thereto, typos in original.]

The above email references Fitness' Hollywood Boulevard location and its employees, including personnel handing out vouchers, and the Operations Manager, Caroline Kim, being on vacation. Alspaugh apparently called the Hollywood Boulevard location and determined that Ms. Kim was on vacation. However, it is unclear how she the came to learned about the remaining information in this email without visiting the Hollywood Boulevard gym. [Mindy Stokesberry Decl., at ¶3.]

On or about May 16, 2023, Alspaugh sent by mail a Federal Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action, entitled *Leah Alspaugh v. Fitness International LLC*, with the case no. 8822-cv-01800-DOC-DFM. [Stokesberry Decl., at ¶4, and **Ex. 3** attached thereto.] The return address on the envelope is "Llyod Wilson, Avendia del Rey, Rio De Jinero (*sic*), Brazil ESR300." [*Id.*] Included in the envelope is an LA Fitness business card for the Downtown LA Bloc – Flower Street location, with the gym's telephone number crossed out and Alspaugh telephone number written in. [*Id.*] The subpoena states that Mr. Wilson, Senior Vice President and Legal Counsel at Fitness, was to appear at the Los Angeles Superior Court, Courtroom 39, on May 23, 2023 at 1:00 p.m.[1], and to bring with him the following documents:

> Documents providing the hire date of sean jean and mindy spokesperry. Financial statemetns payroll checks and time sheets for midy spokesberry and sean jean. Time sheets and payroll checks for your current employment of la fitness. Louis welch payroll and timesheets. Documentation for tax payer irs provineing the name of said taxpayer for la fitness. Any financials relating to fitness international. Loss run report from bloomberg zurich homeland and endurance.

[*Id.*, typos in original.]

On May 30, 2023, Fitness received two envelopes with complaints in them. The first envelope is postmarked May 24, 2023, with a return address of M.J. Barrio with Alspaugh's mailing address. [Stokesberry Decl., at ¶5, and **Ex. 4** thereto.] The envelope contained a document entitled Summons and Complaint for Forcible Detainer CCP 1160 entitled *LA Fitness v. Fitness International LLC, Esporta, City Clubs, Club One Fitness, and Does 1-699*, purportedly filed in the Los Angeles Superior Court on

---

[1] This is the date and location of Fitness' Petition for Workplace Violence Restraining Order, which was heard, and granted, on that same date. [Stokesberry Decl., at ¶4.]

9

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH

May 22, 2023, bearing the case number 23STCV11440. [*Id.*] No such case number appears on the Los Angeles Superior Court's website. It is therefore unclear whether this complaint was actually filed, or if Alspaugh put the incorrect case number on the filing. [De Metruis Decl., at ¶4.]

The second envelope received by Fitness on May 30, 2023 included Summons-Eviction issued by the Orange County Superior Court on May 25, 2023 bearing the case number 30-2023-01327335-cu-ud-cjc, and a Complaint entitled *LA Fitness v. Fitness International LLC, Esporta, City Clubs, Club One Fitness, and Does 1-699*. [Stokesberry Decl., at ¶6, and **Ex. 5** attached thereto.] The envelope also contained a document entitled "Motion for Issuance of Writ of Attachment and Possession." [*Id.*] In the Complaint, plaintiff "LA Fitness" contends that it is lawfully entitled to possession of various club facilities located in Orange County, and that Defendants have prevented plaintiff from gaining possession of the premises. [*Id.*] The Orange County Superior Court website has this matter on file, and there is a hearing scheduled for June 6, 2023 on plaintiff's Ex Parte Application for Right to Attach Order and Writs of Attachment, which Fitness now has to respond to. [De Metruis Decl., at ¶5.]

On May 28, 2023, Alspaugh sent another email to Mindy Stokesberry, again using the address proreults411@gmail.com, which states in pertinent part:

> Happy Memorial Day. Apparently there was an employee who was hit over the head by a member In one of our club. I am not sure who it was I will find out tommorrow but if we have employees upsetting the members probably for selling things like les mills when we do not have les mills and personal training at 16 dollars a session when we do not offer that or package deals. Anyway I don't think the operations manager can file a incident report on the or not but check in and see who it was and that they cannot come back to club.

[Mindy Stokesberry Decl., at ¶7, and **Ex. 6** attached thereto, typos in original.]

Finally, on or about May 29 and 30, 2023, Alspaugh made numerous telephone calls to various Fitness gym facilities, including its Playa Vista, Downey-Lakewood, Long Beach-Cherry, and Downtown Los Angeles gyms. [Mindy Stokesberry Decl., at ¶8.]

### III.     LEGAL AUTHORITY

This Court has the inherent authority to enforce compliance with its orders through contempt, including imprisonment of the contemnor to compel compliance with the Court's orders. *Shillitani v. U.S.*, 384 U.S. 364, 370-371, 86 S. Ct. 1531, 1535. (1966). *See also* 18 U.S.C. 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … (3) Disobedience or resistance to its lawful … order….The conditional nature of the imprisonment – based entirely upon the contemnor's continued defiance – justifies holding civil contempt proceedings absent the safeguards of indictment and jury [citation], provided that the usual due process requirements are met." Citations omitted.)

Contempt may be civil or criminal. To establish civil contempt, the moving party has the burden of establishing "(1) that [the opposing party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Labor/Community Strategy Center v. Los Angeles County Metropolitan Trans. Authority*, 564 F.3d 1115, 1123 (9th Cir. 2009) (citation omitted). The violator's intent is irrelevant, nor does the violation need to be willful. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d. 1361, 1365 (9th Cir. 1987) (citations omitted); *see also Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) ("Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.") Rather, an order of civil contempt is appropriate where a person fails to take all reasonable steps within his/her power to comply. *Crystal Palace, supra,* 817 F.2d. at 1365 (citations omitted).

11

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH

To establish criminal contempt, there must be (1) a clear and definite order of the Court; (2) the contemnor knows of the order; and (3) the contemnor willfully disobeys the order. *U.S. v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980); *U.S. v. Rose*, 806 F.2d 931, 933 (9th Cir. 1986).

Civil contempt and criminal contempt serve distinct purposes. The purpose of civil contempt sanctions is to coerce the contemnor into compliance with the court's order. *U.S. v. Powers*, *supra,* 629 F.2d at 627; *U.S. v. Rose, supra,* 806 F.3d at 933. Where, as here, the failure to perform an act is wholly within the contemnor's power perform, the Court may imprison the contemnor until he or she agrees to comply with the Court's Order. In such cases, the term of imprisonment is considered civil, nor criminal, as it is designed to compel future compliance with the court's orders, rather than punish the contemnor for past violations. *U.S. v. Powers, supra,* 629 F.2d at 626-627; *U.S. v. Rose*, *supra,* 806 F.2d at 933; *American Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 584 (5th Cir. 2000).

Criminal contempt, by contrast, "services to vindicate the authority of court and does not terminate upon compliance with the Court's order." *U.S. v. Rose, supra*, 806 F.2d at 933. Thus, unlike civil contempt, which is meant to coerce compliance with the court's order, criminal contempt seeks to punish the contemnor for his/her violations, and thus the punishment can be imposed even if the contemnor agrees to comply.

The procedure for punishing a contemnor for criminal and/or civil contempt is provided in the Federal Rules of Criminal Procedure, Rule 42(a):

> (a) Disposition After Notice. Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.
>
> > (1) Notice. The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:
> >
> > > (A) state the time and place of the trial;

12

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH

>     (B) allow the defendant a reasonable time to prepare a defense; and
>
>     (C) state the essential facts constituting the charged criminal contempt and describe it as such.
>
> (2) Appointing a Prosecutor. The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.
>
> (3) Trial and Disposition. A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

*See, United States v. Alter,* 482 F.2d 1016, 1023 (9th Cir. 1973) (Although Rule 42 is labeled "criminal," the procedural requirements of the rule apply equally to civil contempt proceedings.)

      Whether the contempt sanctions are civil (remedial) or criminal (punishment), "the alleged contemnor is entitled to the procedural safeguards of notice and a reasonable opportunity to prepare a defense." *U.S. v. Powers*, *supra,* 629.F.2d at 626. Simple notice, including oral notice, is all that is required, and there is no definite time period for a "reasonable opportunity to prepare"; rather, under appropriate circumstances, a short notice period (5 days or even 10 minutes) is considered "reasonable." *Id.* at 625. There is no right to a jury trial before the imposition of contempt sanctions (including imprisonment). *Id.* (Only prosecutions for "serious"

criminal contempt are subject to the right to a jury trial, however even a criminal contempt sentence of 6 months is not "serious" to warrant a jury trial.)

Whether the Court chooses to deal with Alspaugh's conduct as civil contempt, criminal contempt, or both, is left to the sound discretion of this Court. *See U.S. v. Rose, supra,* 806 F.2d at 933 (no error in finding Rose in criminal and civil contempt). However, given the continuing assault of Fitness' business, reputation and goodwill, Fitness asks the Court to fashion a remedy that will compel Alspaugh to comply with the terms of the Permanent Injunction, and provide the requested information so that Fitness can attempt to undo the damage Alspaugh has already done to its goodwill and reputation.

## IV. ALSPAUGH HAS REPEATED AND WILLFULLY VIOLATED THIS COURT'S PERMANENT INJUNCTION

The facts of the present case clearly evidence that Alspaugh has repeatedly and willfully violated the Court's Order re Permanent Injunction.

First and foremost, the May 8, 2023 Order re Permanent Injunction is clear and unambiguous: Alspaugh is permanently enjoined from the following conduct: (1) infringing on Fitness' federally registered trademarks, including "LA Fitness", "L.A. Fitness" and "Pro Results; (2) making representations to any person or entity that she is the owner or representative of, or otherwise affiliated with, Fitness or any of its brands, including LA Fitness and Pro Results; (3) taking any action, including filing any document, in any federal or state court on behalf of or under the name of Fitness or any of its brands, including LA Fitness; (4) contacting Fitness employees by email, phone or in person; (5) using or maintaining any email address that contains the name "Pro Results", "LA Fitness," and/or "Fitness International," or any confusingly similar names; and (6) coming within 50 feet of any of Fitness' facilities, including its gyms and corporate offices. [Dkt. 81.]

Second, there can be no reasonable dispute that Alspaugh knew of the order, its terms, and the precise conduct she was prohibited from in engaging in. Indeed, the

history of this litigation establishes that she has been repeatedly put on notice of both the prohibited conduct and the consequences for her violations of that conduct, on numerous occasions: (1) Fitness' Complaint describes the specific infringing, fraudulent and harassing conduct, and sought the permanent injunction to enjoin such conduct; (2) on November 1, 2022 the Court issued a Preliminary Injunction which addressed the same categories of conduct as set forth in the Permanent Injunction; (3) on December 5, 2022, the Court verbally warned Alspaugh of the "strict consequences" if she violated the Preliminary Injunction; (4) on February 21, 2023, the Court again admonished Alspaugh to comply with the Preliminary Injunction "under penalty of arrest"; (5) on March 6, 2026, the Court held Alspaugh in contempt of Court for her repeated violations of the Preliminary Injunction, and fined her $5,000; (6) after a two-day jury trial in which Alspaugh fully participated, the jury found Alspaugh liable for her infringing, fraudulent and harassing conduct, and awarded Fitness over $600,000 in compensatory and punitive damages for such conduct; and (7) on May 8, 2023, the Court issued a Permanent Injunction.

Alspaugh simply has no basis for arguing that she had no notice of either the Permanent Injunction, its terms, or the conduct proscribed by the injunction.

Third, there can be no serious dispute that Alspaugh has made no effort to comply with any portion of the Court's Order re Permanent Injunction. Indeed, the evidence establishes that Alspaugh's continued (and continuing) violation of the Court's Order re Permanent Injunction is willful and deliberate, including:

1. Her continuing infringement of Fitness' federally registered trademarks LA Fitness and Pro Results by (a) filing an action in the Orange County Superior Court entitled *LA Fitness v. Fitness International, LLC et al.*, and filing (or attempting to file) an action *LA Fitness v. Fitness International, LLC et al.* in the Los Angeles Superior Court as well, and (b) Alspaugh's use of the email address proreults411@gmail.com, a

name which is confusingly similar to Fitness' brand name, "Pro Results" and which Alspaugh started using on May 8, 2023;

2. Alspaugh continues to misrepresent herself as the owner, representative or affiliate of LA Fitness and Pro Results to both third parties and to Fitness employees by filing civil actions in state court under the name "LA Fitness" and by using the email address proreults411@gmail.com;

3. Alspaugh has taken action and filed documents under the name of LA Fitness by filing one (possibly two) state court actions on or about May 24 and 26, 2023, and by seeking a writ of attachment on behalf of LA Fitness against Fitness in her Orange County action;

4. Alspaugh continues to contact and harass Fitness' personnel by email, telephone, U.S. mail, and in person[1];

5. Since the entry of the Permanent Injunction, Alspaugh has been sending emails to Mindy Stokesberry with the email address proreults411@gmail.com, an email address which was purposefully designed to create confusion regarding her affiliation with Fitness' brand, Pro Results; and

6. Trespassing onto Fitness' premises. There are references in Alspaugh's emails to Mindy Stokesberry which contain information that Alspaugh could only obtain by being present at a Fitness club, including her statement that she "found some trainers at Hollywood giving out vouchers" at Fitness' Hollywood Boulevard Club. By her own admission she has visited at least one club in violation of the Permanent Injunction. (*See* fn 1, below)

---

[1] In her May 10, 2023 email to Ms. Stokesberry, Alspaugh states "I found some trainers at Hollywood giving out vouchers," evidencing that she had also visited the Hollywood Fitness gym facility. Similarly, in her May 28, 2023 email to Ms. Stokesberry, Alspaugh refers to an incident that occurred in one of "our clubs," and states she will "find out tomorrow" who was involved in the incident. These references are admissions that Alspaugh is continuing to trespass onto Fitness' premises and communicate with Fitness' personnel to obtain information regarding Fitness' operations.

In addition to the above conduct, the Order re Permanent Injunction required Alspaugh to file within 20 days various documents regarding her improper use of the names "LA Fitness", "Fitness International," and "Pro Results" in commerce and with third parties, including bank accounts opened and contracts entered into under Fitness' or its brands' names, as well as corporate filings with the California Secretary of State and the Internal Revenue Service. [Dkt. 81.] To date, none of the information required to be filed with the Court has been filed. As such, Fitness has no knowledge of the extent of the representations or obligations Alspaugh has made or undertaken using Fitness' and its brands names, nor the extent of the damage Alspaugh has done to Fitness' reputation and goodwill.

Finally, there can be no reasonable dispute that Alspaugh has been given notice and a reasonable opportunity to prepare a defense ahead of the June 5, 2023 contempt hearing. On May 19, 2023, the Court served notice of the status conference to be held on May 30, 2023. [Dkt. 90.] Alspaugh failed to appear at the hearing. After contacting her by telephone, Alspaugh was informed that the hearing would be continued to June 5, 2023. [Dkt. 91.] Further, as discussed above, the conduct Alspaugh has engaged since May 8, 2023, is the same conduct Alspaugh has engaged in throughout this litigation which violated the Preliminary Injunction, and for which the jury found her liable to Fitness – infringing on Fitness' trademarks, taking actions under the name of LA Fitness, harassing Fitness' employees, and trespassing onto Fitness' premises. Alspaugh therefore has had ample opportunity to prepare a defense to this contempt hearing.

///
///
///
///
///
///

## V.    **CONCLUSION**

The facts of the present case clearly indicate that Alspaugh is subject to both civil and criminal contempt. Numerous warnings, the imposition of monetary sanctions, and a jury verdict against her have not made a dent her continued efforts to cause damage to Fitness. Fitness therefore requests that the Court fashion an appropriate remedy to compel Alspaugh to comply with the Court's Order re Permanent Injunction and cease her infringing, fraudulent and harassing conduct.

DATED: June 2, 2023                   YOKA | SMITH, LLP

BY: _____
ALICE CHEN SMITH
CHRISTINE C. DE METRUIS
Attorneys for Plaintiff, FITNESS INTERNATIONAL, LLC

FITNESS INTERNATIONAL, LLC'S STATUS CONFERENCE STATEMENT IN SUPPORT OF CIVIL AND/OR CRIMINAL CONTEMPT SANCTIONS AGAINST DEFENDANT LEAH ALSPAUGH