CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
SAMUEL O. CROSS (Bar No. 304718)
(E Mail: sam_cross@fd.org)
Deputy Federal Public Defender
411 West Fourth Street, Suite 7110
Santa Ana, California 92701-4598
Telephone: (714) 338-4500
Facsimile: (714) 338-4520

Attorneys for Defendant
LEAH ALSPAUGH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 8:22-cv-01800-DOC-DFM |
|---|---|
| Plaintiff, | |
| v. | **EX PARTE APPLICATION FOR IMMEDIATE RELEASE OF DEFENDANT LEAH ALSPAUGH** |
| LEAH ALSPAUGH, | |
| Defendant. | |

Defendant Leah Alspaugh, by and through her counsel of record, Deputy Federal Public Defender Samuel Cross, hereby asks the Court to enter an order immediately releasing Leah Alspaugh from custody because there is no legal basis for her continued detention.

//

//

1

This Ex Parte Application is based on the attached Memorandum of Points and Authorities, and Declaration of Counsel. Undersigned counsel notified counsel for the plaintiff of his intention to apply ex parte for Ms. Alspaugh's release. Plaintiff's counsel opposes the application for release.

                                            Respectfully submitted,

                                            CUAUHTEMOC ORTEGA
                                            Federal Public Defender

DATED: February 7, 2024          By  */s/ Samuel Cross*
                                            SAMUEL CROSS
                                            Deputy Federal Public Defender
                                            Attorneys for Leah Alspaugh

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court issued a bench warrant on October 16, 2023, for the arrest of defendant Leah Alspaugh.[1] ECF No. 130. The warrant was based on the Court's determination that Ms. Alspaugh had engaged in contumacious conduct in violation of the Court's May 8, 2023 Permanent Injunction ("the Permanent Injunction"), which had followed a civil jury verdict and judgment against Ms. Alspaugh. *See* Minutes of Status Conf. Re: Civil Contempt, ECF No. 129; Order Re: Permanent Injunction, ECF No. 81. Ms. Alspaugh was arrested on that warrant over the weekend of February 2–4, 2024. Cross Decl. ¶ 2.

Ms. Alspaugh was brought before the Court for a status conference regarding the contempt order on February 5, 2024. *See* Scheduling Notices, ECF Nos. 145, 146. Ms. Alspaugh appeared in custody. Cross Decl. ¶ 3. She remained in custody after the hearing concluded. *Id.* ¶ 4. The Court directed the parties to file a stipulation or proposed order regarding Ms. Alspaugh, and expressed concern that Ms. Alspaugh be assessed by a mental health professional. *Id.* ¶ 5. The Court also expressed concern that Ms. Alspaugh's behavior toward staff of plaintiff gymnasium company Fitness International, LLC ("Fitness") was becoming increasingly erratic and dangerous. *Id.* ¶ 6; *see* Compl. ¶ 1 (describing generally Fitness's business operations and ownership of many gymnasia in the LA area and elsewhere). The Court set another status conference in this matter for 4:00 p.m. on February 7, 2024. Cross Decl. ¶ 7. Ms. Alspaugh remains detained at the Santa Ana Jail. *Id.* ¶ 8. The parties have not been able to arrive at a stipulation or agreed proposed order. *Id.* ¶ 9. In addition to a notice that Fitness will submit in advance of the February 7, 2024 hearing, Ms. Alspaugh submits the following *ex parte* application for her immediate release from custody.

---

[1] Undersigned counsel has represented Mr. Alspaugh for the limited purpose of addressing potential incarceration for civil contempt since this Court appointed the Federal Public Defender on July 20, 2023. *See* ECF No. 103; *see also* Guide to Judicial Policy, Vol. 7: Defender Services, Ch. 2, § 210.20.20(b), Discretionary Appointments ("Counsel may be appointed under the CJA for a person charged with civil or criminal contempt who faces loss of liberty.").

3

Custody may only be used as a sanction in civil contempt proceedings to compel compliance with lawful court orders—not to punish, protect the community, or for other purposes that apply to the criminal sanction. *Cf.* 18 U.S.C. § 3553(a). A person incapable of compliance with a court order may not be incarcerated for civil contempt. Ms. Alspaugh is not capable of complying with the Court's orders, as she has abundantly shown. Furthermore, Ms. Alspaugh may, in the view of the undersigned, suffer from a mental disease or defect rendering her incapable of understanding the nature of these civil proceedings, assisting counsel or representing herself, or following the Court's commands. Not only should she therefore not be placed in custody for reasons of civil contempt, indefinitely or at all, but the Court should exercise its authority under Federal Rule of Civil Procedure 17(c) and determine whether Ms. Alspaugh is competent to proceed, or should conduct a further hearing on the question.[2] If the Court determines Ms. Alspaugh is not competent to proceed or decides to conduct further hearings on the matter, the Court should appoint a guardian ad litem to represent and protect Ms. Alspaugh's interests, as such a guardian will be able to represent her interests where the Federal Public Defender, appointed for the limited purposes of civil contempt in this matter, cannot.

**I.     Ms. Alspaugh is not capable of complying with the Court's permanent injunction, and should be released immediately because no legal authority exists to detain her.**

"A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016). "The purpose of civil contempt is coercive or compensatory,

---

[2] The record is discussed below. It also consists of materials that Ms. Alspaugh has submitted contemporaneous with this motion via *ex parte* application to file in camera and under seal. These records are discussed generally below but due to their sensitive nature, as explained in the accompany *ex parte* application, should not be publicly disclosed or disclosed to an adversary in civil proceedings. They should also not be publicly disclosed because they are drawn from the file of previous counsel in a state criminal matter.

1 whereas the purpose of criminal contempt is punitive." *Koninklijke Philips Electronics*
2 *N.V. v. KXD Technology*, 539 F.3d 1039, 1042 (9th Cir.2008) (quoting *United States v.*
3 *Armstrong*, 781 F.2d 700, 703 (9th Cir.1986)).  A court may hold a civil contemnor in
4 custody as part of the contempt sanction.  *See, e.g.*, *United States v. Richardson*, 638
5 F.2d 1189, 1189 (9th Cir. 1980).
6       But, because civil contempt (as relevant here) is a coercive sanction, "the ability
7 to purge is perhaps the most definitive characteristic of coercive civil contempt." *Shell*,
8 815 F.3d at 629.
9       Civil contempt differs from criminal contempt in that it seeks only to coerce the
10       defendant to do what a court had previously ordered him to do.  A court may not
11       impose punishment in a civil contempt proceeding when it is clearly established
12       that the alleged contemnor is unable to comply with the terms of the order.  And
13       once a civil contemnor complies with the underlying order, he is purged of the
14       contempt and is free.
15 *Turner v. Rogers*, 564 U.S. 431, 442 (2011) (cleaned up).
16       Ms. Alspaugh is not capable of complying with the terms of this Court's May 8,
17 2023 Permanent Injunction.  Her inability is demonstrated by her behavior throughout
18 the case, her demeanor and behavior in court, and the records relating to Ms.
19 Alspaugh's mental health already submitted and submitted at the same time as this
20 filing.
21     **II.    Ms. Alspaugh's behavior to date in this matter shows she cannot comply**
22           **with the Court's Permanent Injunction.**
23       The Permanent Injunction followed a civil jury verdict and judgment based on
24 Fitness's suit against Ms. Alspaugh.  The suit alleged various trademark infringement,
25 unfair competition, fraud, an intentional interference claims against Ms. Alspaugh. *See*
26 Compl.  Ms. Alspaugh was alleged to have worked for Fitness from 2009 to 2011, and,
27 in 2013, to have sought to be re-employed at a Fitness gym location under false
28 pretenses.  *Id.* at ¶ 8.  Fitness alleged that after that attempt and beginning in 2015, Ms.

Alspaugh engaged in an increasingly bizarre series of actions centering around Fitness gym locations, including: sleeping on the floor of a gym location in 2015, sleeping in an area of the gym designated for children in 2018, sitting at a gym desk without permission and acting as if she worked there in 2018, identifying herself in written correspondence in 2022 as owning a Fitness trademark, and attempting in 2022 to enter Fitness's business offices. *Id.* ¶¶ 9–15; *see id.* at ¶ 9 (describing this conduct as a "pattern and practice of harassing [Fitness], its employees, and members").

The Complaint was filed on October 3, 2022. ECF No. 1. During litigation, Ms. Alspaugh behaved (and continues to behave) in a bizarre and nonsensical manner. She filed several documents with the court that are impossible to decipher, ungrammatical, and, to the extent they are understandable, fantastical and highly delusive.[3] *See, e.g.*, ECF Nos. 17, 29, 87, 141. While Fitness prepared for trial and filed the normal pretrial motions, Ms. Alspaugh filed nothing coherent with the Court and engaged in no structured defense to the charges against her. Fitness repeatedly alleged that she continued to engage in the conduct that gave rise to its suit, including strange acts like asking a third party vendor to inspect the computer system of one of Fitness's gyms in Tennessee; calling Fitness gym locations and concealing her true identity; and frequently appearing in person at Fitness gym locations stated that she was the owner and attempting to "work" on computers there. Appl. for Show Cause Order 3, ECF No. 35; *see also* ECF Nos. 47, 51, 52, 55.

The matter proceeded to a three-day jury trial. ECF Nos. 65, 66, 67. The jury clearly harbored doubts about Ms. Alspaugh's mental fitness, asking by note whether "the defendant's mental or medical condition factor into our decision-making process," and whether "the jury [has] leeway to award punitive damages other than monetary? (Such as mental treatment or otherwise)[.]" Jury Notes (Redacted), ECF No. 70. Ms.

---

[3] The court eventually declared Ms. Alspaugh a vexatious litigant on the basis of these filings and her behavior and began striking these filings as they appeared on the Court's docket. ECF No. 67.

1  Alspaugh was unable to conduct a coherent trial defense, calling no witnesses.  Order
2  Re: Civil Contempt 5, ECF No. 98.  The jury eventually found for Fitness on all counts,
3  and determined that Fitness had suffered exactly $100,000 in past and $100,000 in
4  future damages as a result of infringement on its trademarks by Alspaugh, and $100 in
5  past and in future damages as to each of the other counts of the Complaint.  Special
6  Verdict Form, ECF No. 72; Judgment, ECF No. 82.  Apparently by the expedient of
7  doubling the total amount of that award, the jury also awarded Fitness $401,600 in
8  punitive damages.  *Id.*

9  The Court's contemporaneous Order Re: Permanent Injunction enjoined Ms.
10 Alspaugh from doing all of the things she had been alleged in the to have done in the
11 complaint, and that Fitness alleged she had continued to do during the pendency of
12 litigation, including:  infringing on Fitness trademarks, representing to others that she
13 had a legitimate affiliation with Fitness's various brands, filing actions in Fitness's
14 name, contacting its employees in any way, impersonating its employees, or coming
15 near its gyms or offices.  *Id.* at 2–4.  The Court also ordered Ms. Alspaugh to file a
16 variety of documents within 20 days indicating compliance in specified ways with the
17 Court's order.  *Id.* at 4–5.

18 Since that date, Fitness has filed no fewer than 11 independent notices,
19 statements, and updates to the Court of various description, all alleging similar conduct:
20 that Ms. Alspaugh continues to violate the Court's permanent injunction, most
21 commonly by sending cryptic emails and letters to Fitness employees and going into
22 Fitness locations and behaving as if she works in or owns those locations or the whole
23 business.  ECF Nos. 81, 93, 120, 122, 131, 132, 133, 134, 136, 137, 143.  After the first
24 two such notices, the Court held Ms. Alspaugh in contempt, making requisite factual
25 findings by clear and convincing evidence and specifically finding that Ms. Alspaugh's
26 "past conduct, recent violations, and refusal to participate in the May 30, 2023 or June
27 5, 2023 hearings demonstrate an unwillingness to comply with the Order re Permanent
28 Injunction."  Order Re: Civil Contempt 16.  The Court ordered her to comply with the

1  Permanent Injunction and ordered that she be placed in custody for from five to 30
2  days, or until she agreed to comply with the Court's Permanent Injunction.  *Id.*
3        Because Ms. Alspaugh had not appeared in court for recent hearings, the Court
4  issued a warrant for her arrest based on the civil contempt holding.  ECF No. 102.
5  When Ms. Alspaugh was brought before the Court on the warrant on July 20, 2023, the
6  Federal Public Defender was appointed to represent her.  ECF No. 103.  The Court
7  expressed concerns on the record regarding Ms. Alspaugh's mental state and
8  competency.  *See* ECF Nos. 103, 104, 107.  The Court attempted to order that Ms.
9  Alspaugh be medically evaluated by the Bureau of Prisons, but the Bureau, through its
10 counsel, refused.  ECF Nos. 110, 114.  At the Court's order, Ms. Alspaugh was briefly
11 and inconclusively examined by medical staff employed by Wellpath, the health
12 services provider at the Santa Ana Jail.  Cross Decl. ¶ 10.  Ultimately, the Court
13 conducted a brief colloquy with Ms. Alspaugh at during which she verbally agreed to
14 abide by the Court's Permanent Injunction, and the Court ordered her release.  Aug. 9,
15 2023 Minutes, ECF No. 118.
16       Since that August hearing, Fitness has submitted a memorandum and various
17 "supplements" thereto alleging Ms. Alspaugh's continued violation of the Permanent
18 Injunction, generally by means of entering Fitness gym locations and stating she works
19 there or owns Fitness.  ECF Nos. 120, 122, 131, 132, 133, 134, 135, 136, 137.  In
20 response, the Court held a status conference on October 3, 2023, and a status
21 conference and evidentiary hearing on October 11, 2023, at which Ms. Alspaugh was
22 not present, and at which the Court heard evidence regarding various electronic
23 communications to Fitness staff by Ms. Alspaugh of a generally bizarre and
24 incomprehensible nature.  ECF No. 127; *see* Stokesberry Decl. 2–4, ECF No. 120-7
25 (representatively, "I will be out of town but I had a dream about Louis and Cheyenne
26 and then this club pride made told me they saw Michu in Downey today. It's crazy but I
27 know that operations manager is using yelbas name it's not the same person who
28 worked for us before. I got a royal gold speedo.").  The Court issued a warrant for Ms.

Alspaugh's arrest based on another contempt finding, but held the warrant in abeyance until a hearing the following Monday, to give Ms. Alspaugh time to appear and respond.  ECF No. 127.  Ms. Alspaugh did not appear at the Monday hearing and the warrant issued.  ECF No. 130.

In the interim, Fitness alleges that Ms. Alspaugh continued showing up at various Fitness locations, claiming to work there, taking the door keys from a gym location, and pushing staff members.  ECF Nos. 131, 132, 133, 134, 135, 136, 137.  Ms. Alspaugh was eventually arrested by state authorities and later brought before the Court on the Court's bench warrant.  Cross Decl. ¶ 2.  On February 5, the Court heard testimony and reviewed video evidence of some of the pushing, and continued the matter until February 7, 2024.  ECF No. 147.  At the hearing, Ernest Roque, an operations manager at Fitness's La Habra gym location, testified that Ms. Alspaugh had appeared at the La Habra location on several occasions, and pushed him without injuring him.  Cross Decl. ¶ 11.  He also testified that she appeared to believe she worked at or owned LA Fitness and/or the LA Habra location.  *Id.*

Ms. Alspaugh, as all parties are aware, continues to maintain to anyone who will listen that she works for or owns Fitness.  This is after Fitness filed a lawsuit against her, after Fitness obtained a judgment of nearly half a million dollars and a permanent injunction, and after having been held in contempt by the Court for continuing to maintain that she works at and/or owns Fitness.  This is after having been arrested on multiple occasions for trespass or for violations of the Court's order.  Ms. Alspaugh's written filings to the Court have been nonsensical and have not addressed or acknowledged any of the relevant legal issues.  In sum, Ms. Alspaugh has acted consistently in word and deed as a person who has the unshakable, delusional belief that she owns or works at Fitness gym locations.  No sanction the Court has imposed— indeed, no action the Court or Plaintiff have taken to date in the broad arsenal of civil litigation and civil contempt—appears to have shaken this belief on Ms. Alspaugh's part, or even to have compelled her to act as if she does not believe it.

The obvious inference, addressed below, is that Ms. Alspaugh suffers from a mental disease or defect that causes her to behave this way. It is also clear that Ms. Alspaugh is not capable of behaving otherwise, and thus, of complying with the Court's Permanent Injunction.

"A court may not impose punishment in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *Turner*, 564 U.S. at 442. The Court may not impose punishment, in the form of custody, on Ms. Alspaugh, because it is clearly established, by the records of this case, that she cannot comply with the terms of the permanent injunction. Continued incarceration of Ms. Alspaugh would thus violate her right to due process. U.S. Const. amend. V; *see Turner*, 564 U.S. at 449.

### III. Ms. Alspaugh is likely not competent to proceed in this matter, and the Court should address the matter and make findings, or should order a hearing to be held on this matter and should appoint an expert to evaluate Ms. Alspaugh.

An individual's competence, or ability to sue and be sued, is determined by the law of his domicile. Fed. R. Civ. P. 17(b)(1). Here, Ms. Alspaugh is a domiciliary of California, as shown by her registered address with the Court. "In California, a party is incompetent if he or she lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the case." *Golden Gate Way, LLC v. Stewart*, No. 09–04458, 2012 WL 4482053, at *2 (N.D.Cal. Sept. 28, 2012); *see* Cal. Civ. P. Code § 372.

Under California law, evidence of incompetence may be drawn from various sources, but the evidence relied upon must speak to the court's concern whether the person in question is able to meaningfully take part in the proceedings. California law adopts a broad view of relevance, and a state court of appeal has emphasized a trial judge's duty to clearly bring out the facts. The court's first-

hand observations of and interactions with the person may inform a court's decision. Likewise, a federal judge may elicit evidence by direct questioning. *AT&T Mobility, LLC v. Yeager*, 143 F. Supp. 3d 1042, 1050 (E.D. Cal. 2015) (cleaned up).

Here, several overlapping facts demonstrate that a significant doubt exists as to Ms. Alspaugh's competence.[4] The same facts also demonstrate, as discussed above, that Ms. Alspaugh is incapable of complying with the Court's permanent injunction. Specifically:

- Evaluations of Ms. Alspaugh previously ordered while she was in custody at Santa Ana Jail, although brief, demonstrate significant concerns about her mental health.
- Ms. Alspaugh's demeanor in court, during her trial and at other proceedings, has raised serious concerns for the Court about her competence.
- The trial jury itself wondered if it could provide Ms. Alspaugh with mental health treatment rather than ordering punitive damages.
- Ms. Alspaugh's behavior and statements demonstrate a consistent, highly irrational belief that she in some way owns or works at LA Fitness despite overwhelming evidence to the contrary.
- As substantiated in a separate filing offered under seal and in camera, Ms. Alspaugh was deemed by a California state court as recently as April 19, 2021, to be not competent to stand trial in a criminal matter and not restorable to

---

[4] The undersigned, and the Federal Public Defender, were appointed to represent Ms. Alspaugh as to civil contempt proceedings only. Information relating to Ms. Alspaugh's competence in this Section, and in a related, contemporaneous under seal and in camera filing, is offered to the Court for two purposes: to substantiate the argument offered herein that Ms. Alspaugh cannot be detained for reasons of civil contempt, and to substantiate for the Court counsel's significant concern regarding Ms. Alspaugh's competence, based on counsel's representation of Ms. Alspaugh to date. The Guide to Judiciary Policy does not appear to contemplate appointment of the Federal Public Defender to represent Ms. Alspaugh in proceedings in the underlying civil matter as to competence.. *See* Guide to Judicial Policy, Vol. 7: Defender Services, Ch. 2, § 210.20.20(b), Discretionary Appointments. As noted below, appointment of a guradian ad litem for that purpose would appear more appropriate.

competence. That determination was based in part on a psychological report prepared in that matter, also submitted to the Court under seal and in camera.

- Based on his representation of Ms. Alspaugh to date, the undersigned counsel has a significant doubt that she is able either to understand the nature or consequences of these proceedings, or to assist him in his limited representation. Cross Decl. ¶ 12.

Taken together, it is the view of the undersigned that these reasons may on their own provide the Court with a basis to deem Ms. Alspaugh incompetent, and at the very least require the Court to inquire into Ms. Alpaugh's competency and make appropriate findings. *See* Cal. Civ. P. Code § 372. Should the Court so deem, the Court must appoint a guardian ad litem to represent Ms. Alspaugh's interests. Fed. R. Civ. P. 17(c)(2) ("The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action.").[5] Were the Court to appoint a guardian ad litem to represent Ms. Alspaugh, it would be appropriate to direct that guardian to respond to the Court within a set period with more information about how the guardian thinks it best to proceed in this matter. In appointing a guardian the Court could refer the matter to the Public Guardian of the Orange County's Care Agency.[6]

Alternatively, the Court can order further proceedings to determine whether Ms. Alspaugh is competent. Under this scenario, it would also likely be prudent to appoint a guardian to represent Ms. Alpaugh's interests. As noted in the previous filing of the Bureau of Prisons in this matter, the Court has the authority to appoint an independent expert under Rule 706 of the federal rules of evidence. "Such an appointment is within

---

[5] The Court may of course issue "another appropriate order" under Rule 17. However, as noted in Footnote 4, *supra*, undersigned counsel does not and cannot represent Ms. Alspaugh in proceedings having to do with her competency to proceed in a civil matter. It would therefore be appropriate for the Court to appoint a representative of Ms. Alspaugh's interests who can so represent her.

[6] https://www.ochealthinfo.com/about-hca/strategy-special-projects/office-public-guardian.

the discretion of the trial judge and may be appropriate when 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or decide a fact in issue.'" Brief of Bureau of Prisons, ECF N. 114 (quoting *Torbert v. Gore*, 2016 WL 3460262, at *2 (S.D. Cal. June 23, 2016)). If the Court believes more information about Ms. Alspaugh's mental condition is required, the Court should appoint such an expert and set the matter for further hearing based on that expert's report.

## IV. Conclusion

For the reasons stated herein, the Court should order Ms. Alspaugh's immediate release from custody, and such other and further proceedings as the Court deems necessary to determine Ms. Alspaugh's competence and protect her interests if deemed incompetent.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 7, 2024        By  /s/ *Samuel Cross*

SAMUEL CROSS
Deputy Federal Public Defender
Attorneys for Leah Alspaugh