**Alice Chen Smith, SBN 251654**
asmith@yokasmith.com
**Christine C. De Metruis, SBN 203610**
cdemetruis@yokasmith.com
**YOKA | SMITH, LLP**
**445 South Figueroa St., 38th Floor**
**Los Angeles, California 90071**
**Phone:  (213) 427-2300**
**Fax:      (213) 427-2330**

Attorneys for Plaintiff, FITNESS INTERNATIONAL, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITNESS INTERNATIONAL, LLC<br><br>         Plaintiff,<br><br>-vs-<br><br>LEAH ALSPAUGH and DOES 1 through 50, inclusive,<br><br>         Defendant. | Case No.: 8:22-CV-01800-DOC-DFM<br><br>**FITNESS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT LEAH ALSPAUGH'S RENEWED *EX PARTE* APPLICATION FOR IMMEDIATE RELEASE** |

Plaintiff, FITNESS INTERNATIONAL, LLC ("Fitness") respectfully submits the following Opposition to Defendant LEAH ALSPAUGH's ("Defendant") Renewed Ex Parte Application For Immediate Release.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. DEFENDANT'S RENEWED EX PARTE APPLICATION IS IMPROPER

Defendant's "renewed" ex parte application (Dkt. No. 153) is wholly improper. Noticeably absent from Defendant's application is any authority by which a party can *renew* a previously denied ex parte application. Indeed, there is no such authority. While a party may seek *reconsideration* of a previously denied motion or application, Local Rule 7-18 provides only for a *motion* for reconsideration, not an *ex parte application* for reconsideration. On that basis alone, Defendant's application is improper.

Putting aside the propriety of seeking reconsideration on an ex parte basis, Defendant has not met her burden of showing entitlement to reconsideration under Local Rule 7-18. First, Defendant's renewed application is untimely. Local Rule 7-18 requires motions for reconsideration to be filed "no later than 14 days after entry of the Order that is the subject of the motion or application." Here, the Court denied Plaintiff's original ex parte application on February 15, 2024. (Dkt. No. 151.) As such, any motion for reconsideration was required to be filed no later than February 29, 2024. Defendant, however, filed her renewed ex parte application on March 1, 2024. (Dkt. No. 153.) As such, the ex parte is late.

Second, Defendant does not cite to any material difference in fact or law, new material facts or change in law, or any material facts previously presented that the Court did not consider, as required for reconsideration. Indeed, the only purportedly "new" fact is that the Santa Ana Jail apparently informed an investigator retained by Defendant that they would not perform the psychological evaluation of Defendant as ordered by the Court. (Dkt. No. 153, at p.13, and Exhibit A thereto.) However, this is not truly a "new" fact, as the parties discussed at length the difficulty in obtaining a psychological evaluation of Defendant during the February 15, 2024, hearing and, indeed, the Court spoke with an attorney who handles guardianship issues during legal proceedings involving incompetent persons, Rod Stern, Esq., of Murtaugh Treglia Stern & Deily,

2

FITNESS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT LEAH ALSPAUGH'S RENEWED *EX PARTE* APPLICATION FOR IMMEDIATE RELEASE

regarding the difficulty in finding psychological resources under the facts of this case during the February 15, 2024 hearing. Finally, while Fitness' counsel was excluded much of the proceedings during Defendant's original July 2024 detention for violations of the Permanent Injunction, it was clear that it was difficult to find the appropriate agency to conduct a mental evaluation of Defendant. (*See, e.g.*, Dkt. No 114 (response of the Federal Bureau of Prisons to the Court's July 28, 2023 Order.) In short, the Court was well aware of the difficulties in obtaining a mental health evaluation of Defendant prior to denying Defendant's February 7, 2024, ex parte application for immediate release, and thus the Santa Ana's communication with Defendant's counsel's investigator does not constitute new or different material facts sufficient to support a motion for reconsideration.

      The Court gave careful consideration to all of Defendant's arguments regarding her continued detention prior to denying Defendant's previous ex parte application for immediate release, including arguments set forth in Defendant's papers as well as oral argument. Further, Court undertook independent research regarding its inherent authority to detain Defendant to compel compliance with the permanent injunction. Based on the Court's own research, it determined that continuing Defendant's detention was not punitive, but was coercive, as the only way to ensure compliance is through a mental health intervention while she is detained. (Dkt. No. 152.) Thus, the Court properly concluded that "a mental health evaluation is the only way to ensure that [Defendant] can understand the nature of these proceedings and her obligations under the permanent injunction." (*Id.*, at p. 2.) While Fitness respectfully disagrees with the Court's determination that Defendant does not understand the nature of the proceedings or her obligations under the permanent injunction (*see below*), Fitness does agree with the Court's determination that Defendant requires intervention mental health services.

      Notably, Defendant does not disagree that she requires mental health services – to the contrary, throughout her ex parte application she refers to herself as mentally ill. Yet neither she nor her counsel offer any proposal as to how Defendant will obtain the

FITNESS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT LEAH ALSPAUGH'S
RENEWED *EX PARTE* APPLICATION FOR IMMEDIATE RELEASE

needed mental health services if she is released, nor does Defendant or her counsel offer any assurance that Defendant *will* comply with the permanent injunction if she is released. To the contrary - the only proposal offered by Defendant is that she be released so she can continue harassing and assaulting Fitness personnel and stealing Fitness' property, thereby endangering both Fitness personnel and Defendant. This is not hyperbolic – at the February 5, 2024, hearing, Fitness presented incontrovertible evidence of Defendant's physical assault against one of Fitness' employees on several occasions.

The Court clearly considered the parties' respective positions, performed its own research, and correctly concluded that it has the inherent authority to detain Defendant to coerce compliance with its Preliminary Injunction. Defendant has not met her burden of showing that the Court's denial of her prior ex parte application was erroneous, and fails to present any new or different facts or law to support her "renewed" ex parte application for immediate release. As such, Defendant's ex parte application should be denied.

## II. THE COURT SHOULD DENY DEFENDANT'S RENEWED EX PARTE APPLICATION AS THE COURT HAS THE INHERENT AUTHORITY TO DETAIN DEFENDANT TO COMPEL COMPLIANCE

Even if the Court considers Defendant's improper ex parte application, the Court has the inherent authority to detain Defendant to coerce compliance with its orders. *See Shillitani v. U.S.,* 384 U.S. 364, 370-371, 86 S. Ct. 1531, 1535. (1966). *See also* 18 U.S.C. 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … (3) Disobedience or resistance to its lawful … order…." Citations omitted.)

Civil contempt does not require a showing of intent. Rather, civil contempt requires clear and convincing evidence that Defendant violated the Court's order, that the violation was not based on a good faith and reasonable interpretation of the order. *Labor/Community Strategy Center v. Los Angeles County Metropolitan Trans.*

4

FITNESS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT LEAH ALSPAUGH'S RENEWED *EX PARTE* APPLICATION FOR IMMEDIATE RELEASE

*Authority*, 564 F.3d 1115, 1123 (9th Cir. 2009) (citation omitted); *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d. 1361, 1365 (9th Cir. 1987) (citations omitted); *see also Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) ("Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.")

The purpose of civil contempt sanctions is to coerce the contemnor into compliance with the court's order. Imprisonment is considered civil, nor criminal, where, as here, it is designed to compel future compliance with the court's orders, rather than punish the contemnor for past violations. *U.S. v. Powers*, 629 F.2d 619, 626-627 (9th Cir. 1980); *U.S. v. Rose*, 806 F.2d 931, 933 (9th Cir. 1986). The Court therefore has ample authority to detain Defendant to compel compliance with the permanent injunction.

By way of her renewed ex parte application, Plaintiff puts forth several arguments in support of her contention that the Court does not have authority to detain her to coerce compliance with the Permanent Injunction, none of which withstand scrutiny.

First, Defendant appears to blame Fitness for her present predicament, arguing that Fitness "only wishes to prevent Ms. Alspaugh's liberty…." (Dkt. 153, at 7:10-11.) In so arguing, Defendant mischaracterizes and downplays her conduct, including physical attacks on Fitness' employees and theft of Fitness' property, as "harassing [Fitness'] staff or damaging portable or real property." (Dkt. No. 153, at 6:24-7:1.) Frankly, Defendant's criminal conduct is not some harmless prank, as Defendant seems to think. Fitness presented clear, convincing, and uncontroverted evidence that Defendant targeted and physically assaulted one of its employees, and that Defendant stole keys to Fitness' La Habra gym, requiring Fitness to re-key the entire gym to stop Defendant from committing further criminal acts. Put simply, Defendant's attempt to recast this case with Fitness as the perpetrator and Defendant as the victim is repugnant. Fitness and its employees are the victims, and at some point, Defendant and her counsel will have to accept this inconvenient fact.

Second, contrary to Defendant's contention, Rule 17(c) does not mandate the Court appoint a guardian ad litem to proceed with the contempt proceedings. (Dkt No., 153, at p. 8:3-9.) Rather, Rule17(c)(2) provides in pertinent part "The court must appoint a guardian ad litem – *or issue another appropriate order* – to protect a minor or incompetent person who is unrepresented in an action." (Emphasis added.) The Ninth Circuit has held that the Rule 17(c) gives the Court discretion to appoint a guardian, and need not appoint one where the person can be otherwise protected. In *Naruto v. Slater* 888 F.3d 418, 422-423 (9th Cir. 2018), the Ninth Circuit stated in pertinent part:

> Federal Rule of Civil Procedure 17, which authorizes "next friend" lawsuits, obligates the court "to consider whether [incompetent parties] are adequately protected," even where they have no "next friend" or "guardian." *U.S. v. 30.64 Acres of Land,* 795 F.2d 796, 805 (9th Cir. 1986). Within this obligation, the court has "broad discretion and need not appoint a guardian ad litem [or next friend] if it determines the person is or can be otherwise adequately protected." *Id.* (citing *Roberts v. Ohio Casualty Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958) ("Rule 17(c) doe not make the appointment of a guardian ad litem mandatory.") … For example, "the court may find that the incompetent person's interests would be adequately protected by the appointment of a lawyer." *Krain v. Smallwood,* 880 F.2d 1119, 1121 (9th Cir. 1989) …

Here, Defendant is represented by competent counsel in these contempt proceedings and, as such, the mandate of Rule 17(c) that the court protect Defendant's interests in these contempt proceedings is met.

Finally, Defendant's contention that her continuing detention rests not on her willingness or ability to comply with the permanent injunction, citing to Federal Rule of Civil Procedure 17(c)(2) (Dkt. No.153, at 7:22-8:14), is likewise without merit. As noted above, while this Court has made the determination that Defendant cannot comply with the Court's permanent injunction due to her mental health issues, Fitness must respectfully disagree. Under Rule 17(c), federal courts look to state law re determining whether someone is incompetent. Under California law, a party is incompetent "if he or she lacks the capacity to understand the nature or consequences of the proceeding, or

is unable to assist counsel in the preparation of the case." *In re Jessica G.* 93 Cal.App.4th 1180, 1186.  Thus, in determining whether someone is incompetent under Rule 17(c), the issue is not whether someone acts bizarrely, but whether she is able to understand the nature or consequences of the proceedings.  Defendant is.

Defendant's ability to understand the nature and consequences of her actions have been well-documented by Fitness through its numerous post-trial filings.  In summary:

- **Defendant Acts Are Targeted.**  There is nothing random about Defendant's conduct – to the contrary, her conduct is specifically designed to achieve her goal of damaging Fitness and harassing its personnel:
    o Defendant initially targeted Fitness' downtown Los Angeles gym, and specifically its employee Alexandra Garcia, including trespassing on the property, causing property damage, and filing a petition for a restraining order against Ms. Garcia in the Los Angeles Superior Court.  Defendant became aware that each time she entered the location, the police would be called, and so she would leave prior to the police arrival in order to avoid being arrested.
    o Once the downtown LA Fitness location became too bothersome for Defendant, she switched targets, focusing on the Hollywood Boulevard location, then two locations in Irvine, then a location in Long Beach.  Again, each time the police were called, Defendant knew that she would have to leave before the police arrived to avoid being arrested.
    o Defendant's disruptive efforts are no focused on Fitness' La Habra location.  Again, each time the police are called, Defendant leaves the gym to avoid arrest.  Indeed, as Ernest Roque testified during the February 5, 2024, hearing, on January 29, 2024, Defendant left the La Habra location after the police were called, and waited at a nearby Petco waiting for the police to come and go.

- o Defendant has also targeted specific Fitness employees whom she believes cause her difficulty, as noted above, first Alexandra Garcia, and now Ernest Roque.
- **Defendant knows how to use and manipulate the Court system to her advantage to continue her harassment.**
    - o Defendant has filed two separate lawsuits as LA Fitness against Fitness International. The first one was filed in the Los Angeles Superior Court and, after that case was dismissed, she filed a similar action in the Orange County Superior Court.
    - o Defendant has filed numerous motions in the present action, and appealed the jury verdict. She also sought to stay the permanent injunction.
- **Defendant understands she is prohibited from infringing on Fitness' trademarks and has created a "workaround".**
    - o Prior to the trial in this matter, Defendant infringed on Fitness' federally registered trademark "Pro Results" by using the name in her email addresses (i.e. proresults411@gmail.com). After the jury verdict and permanent injunction, Defendant changed her email address to what she believed was a noninfringing address, proreults411@gmail.com (deleting the first "s" in "proresults"). Defendant therefore not only knew she was prohibited from using Fitness' trademarked name in her email address, she created a workaround in the hopes of avoiding a claim of continuing infringement.

At bottom, Fitness does not disagree that Defendant has mental health issues. However, having mental issues alone does not establish that Defendant is unable to comply with the Court's orders or that she does not understand the consequences of her conduct. As outlined above and as discussed in detail in Fitness' numerous post-trial briefs, Defendant knows precisely what she is doing, knows when it's time to change

the Fitness target to avoid being arrested, and knows how to use the court system to target Fitness and its employees.

### III.     CONCLUSION

This Court released Defendant over Fitness' objections on August 9, 2023. Fitness objected not because of a desire to keep Defendant incarcerated, but because Fitness believed that Defendant's representations at that hearing were simply a recitation of what the Court wanted to hear, and understood that after a brief period, Defendant's conduct would start up again. Unfortunately, Fitness was proved right. In the five months that followed her release, Defendant continued her attacks on Fitness and its personnel, and as this Court noted, her attacks escalated to the point of criminal conduct.

As discussed above and in Fitness' numerous post-trial filings, Defendant has engaged in a systematic pattern of conduct designed to harass Fitness in violation of the Court's permanent injunction . Defendant knows that her conduct violates the Court's Order, and further knows how to avoid the consequences of those violations (i.e., by harassing Fitness' employees and then leaving after the police are called to avoid arrest, or by changing the spelling of "pro results" to avoid claims of continuing infringement). As such, Defendant holds the keys to her detention and can open the gate of the jail cell by actually complying with the Court's Order.

However, even if the Court continues to find that Defendant is "incompetent," and thus does not understand the consequences of her conduct, continued her continued detention is still coercive as the Court has already found that the only way for Defendant to comply is through a mental health intervention. There is nothing punitive about helping the Defendant to comply with the Court's order. The only way to ensure that Defendant will *not* comply with the Court's permanent injunction is what Defendant proposes in her improper "renewed" ex parte – release Defendant without any evaluation or services, so she can resume her harassing and criminal conduct.

FITNESS INTERNATIONAL, LLC'S OPPOSITION TO DEFENDANT LEAH ALSPAUGH'S RENEWED *EX PARTE* APPLICATION FOR IMMEDIATE RELEASE

Based on the foregoing, Fitness respectfully requests the Court deny Defendant's renewed ex parte application for immediate release.

DATED: March 6, 2024                         YOKA | SMITH, LLP

BY: _____
ALICE CHEN SMITH
CHRISTINE C. DE METRUIS
Attorneys for Plaintiff, FITNESS INTERNATIONAL, LLC